501 P.2d 278

**Mark CLARK, Jr., Plaintiff-Respondent,**

v.

**Thayne GNEITING, Defendant-Appellant.**

**No. 10956.**

Supreme Court of Idaho.

Sept. 25, 1972.

Dean Williams, Kerr & Williams, Blackfoot, for defendant-appellant.

Thomas E. Moss, Stout & Moss, Blackfoot, for plaintiff-respondent.

McQUADE, Chief Justice.

During the events here in issue, the appellant, Mr. Thayne Gneiting, operated a farm near Blackfoot, Idaho, and owned the "M & G Dairy" in Logan, Utah. Until approximately January 1, 1964, appellant and one Veldon Miller had operated the "M & G Dairy" as partners. At that time, the partnership was terminated and Miller became an employee of the appellant. Miller's function, as appellant described it at trial, was to "oversee" day-to-day operations on the dairy premises. Besides seeing that the milk reached the creamery, Miller's duties as "overseer" included feeding, milking and caring for the cows.

On February 1, 1964, Miller traveled to Wyoming to look for a supply of hay suitable for the dairy. He found such a supply of hay owned by the respondent, Mr. Mark Clark, Jr., and offered to purchase the hay on behalf of the dairy. Respondent agreed to sell a portion thereof consisting of at least 100 tons, at $20 per ton, if the buyer would assume the cost of hauling it to Utah. At this time, Miller phoned appellant, who later testified that during this call he agreed to buy the hay for the dairy if it was "good hay." Miller then wrote a check for $2,000 drawn on the "M & G Dairy." Subsequently, Miller had a third man, one Victor Tippets, remove the hay from respondent's property in several loads.

The check given Clark by Miller had been postdated to April 1, 1964. Respondent presented the check for payment on that date and it was returned unpaid. A second check for $500, payable to Clark and signed by Gneiting, was also returned by the bank unpaid. Clark then brought this action against Gneiting to recover the purchase price of the hay. A court trial was conducted late in 1970.

Gneiting testified that only one load of hay was delivered to his dairy, although some 17 loads were hauled from Clark's farm. Gneiting also maintained, in conflict with Clark's testimony, that the delivered hay was not suitable for feed. Gneiting further contended that Miller did not have authority as his agent to purchase the hay. The $500 check, although sufficient to cover a larger load of hay than the single delivered load, was explained as a favor to Miller. Clark testified that he spoke on the phone to Gneiting, who agreed to pay the full amount, but needed more time to get sufficient funds. Gneiting denied ever having talked to Clark. At the conclusion of all evidence, the district court entered judgment in favor of the respondent Clark for $2,619.80 plus interest.[1] This appeal is from that judgment.

In his principal assignments of error, appellant Gneiting argues that the trial court erred in admitting certain evidence, and challenges the general sufficiency of all the evidence to support a finding that Miller acted as Gneiting's agent. Our review of the record discloses sufficient evidence for the district court to have found actual or apparent authority for Miller's actions on behalf of the appellant. Actual authority may be either express or

---

1. Clark testified that 261,980 pounds of hay were involved in the sale. At a price of $20 per ton, this comes to a total price of $2,619.80.

implied, implied authority being that which is necessary, usual, and proper to accomplish or perform the main authority expressly delegated to an agent.[2] Apparent authority is created when a principal voluntarily places an agent in such a position that a person of ordinary prudence, conversant with the business usages and the nature of a particular business, is justified in believing that the agent is acting pursuant to existing authority.[3] Where the existence of an agency relationship is disputed, it is a question for the trier of fact to resolve from the evidence.[4]

■ Implied or apparent authority could have been found by the district court from testimony concerning Miller's role as "overseer," Miller's apparent authority to write checks for the dairy, or from Gneiting's testimony that Miller could purchase the hay for the dairy if it was "good hay." Appellant, upon cross-examination under the statute,[5] testified as follows:

"Q. You did tell him if he thought it was good hay he could go ahead and buy it for you?

"A. For the dairy, yes."

■■ The appellant correctly maintains that the declarations of an alleged agent, standing alone, are insufficient to prove the grant of power exercised by him and to bind his principal to third parties.[6] However, he draws from this premise the assertion that Clark's testimony concerning Miller's declarations of agency should not have been admitted. Contrary to this assertion, in the present case independent evidence of a possible agency relationship had already been adduced before the introduction of Clark's testimony. Appellant also attacks the testimony of Clark concerning the statements made to him by the alleged agent, Miller, arguing that these statements were hearsay, and should have been excluded as incompetent evidence.[7] This case falls within the rule articulated by this Court in Hayward v. Yost:[8]

"The declarations of an alleged agent made outside the presence of the alleged principal are, of themselves, incompetent to prove agency, Cupples v. Stanfield, 35 Idaho 466, 207 P. 326, yet where the agency has been established by independent evidence, the declarations as corroborative evidence are admissible. Lightner v. Russell & Pugh Lumber Co., 52 Idaho 616, 17 P.2d 349; see also Ennis v. Smith, 171 Wash. 126, 18 P.2d 1; Bell v. Washam, 82 Ga.App. 63, 60 S.E.2d 408; 3 C.J.S. Agency § 322."

■■ There is also evidence tending to show ratification by Gneiting of Miller's actions. Clark's testimony with respect to a telephone conversation with Gneiting, if believed, indicates ratification by Gneiting of Miller's acts.[9] A principal may be bound by even unauthorized acts of his agent if subsequent to such acts he voluntarily and knowingly ratifies what has been done even though the principal does not actually receive the full consideration to which he is entitled under the terms of the contract.[10] Several months after the sale Gneiting issued a check for $500 to Clark upon receiving the load of hay which actually was delivered. Although the exact effect of this check is disputed, it

2. See cases in Annot., 55 A.L.R.2d 6, 13–17, 27–30 (1957).

3. E. g., Clements v. Jungert, 90 Idaho 143, 152, 408 P.2d 810 (1965); Anderson v. Smith Frozen Foods of Idaho, Inc., 83 Idaho 494, 365 P.2d 965 (1961); John Snowcroft & Sons Co. v. Roselle, 77 Idaho 142, 289 P.2d 621, 55 A.L.R.2d 1 (1955).

4. John Snowcroft & Sons, Co. v. Roselle, supra, note 3, 77 Idaho at 146, 289 P.2d 621; Thornton v. Budge, 74 Idaho 103, 257 P.2d 238 (1953).

5. I.C. § 9–1206.

6. E. g., Killinger v. Iest, 91 Idaho 571, 575, 428 P.2d 490 (1967).

7. See Lightner v. Russell & Pugh Lumber Co., 52 Idaho 616, 623, 17 P.2d 349 (1932).

8. 72 Idaho 415, 429, 242 P.2d 971 (1952).

9. See Restatement (Second) of Agency § 93 (1958).

10. Restatement (Second) of Agency §§ 84, 92(e) (1958).

also tends to show appellant's voluntary ratification of the entire purchase.

▪ Clark was allowed by the district court to testify regarding the amount of hay sold and the price for this hay. Respondent refreshed his memory with a memorandum he had written at the time the hay was weighed. Appellant objected to any testimony by Clark, concerning the alleged tonnage of hay, as being incompetent. To be competent to testify, a witness must have the ability to perceive, recollect and communicate with reference to the occurrences involved.[11] Whether Clark was competent to testify was for the trial court's determination. Clark's reference to the memorandum as to the hay tonnage was permissible under I.C. § 9–1204, which provides in part:

"A witness is allowed to refresh his memory respecting a fact, by anything written by himself, or under his direction, at the time when the fact occurred, or immediately thereafter, or at any other time when the facts were fresh in his memory, and he knew that the same was correctly stated in the writing."

The memorandum in question was not admitted into evidence, and any use made of it at the trial court level was within the scope of I.C. § 9–1204.

▪ Finally, appellant attacks the trial court's finding of fact number six as a conclusion of law rather than a finding of fact. Finding of fact number six reads as follows:

"Defalcations on the part of Veldon Miller in handling the hay were the risk of defendant Thayne Gneiting, his principal, who must bear the loss of such defalcations if any did in fact occur."[12]

Appellant is correct; this is a conclusion of law rather than a limited finding of fact. However, the error is harmless because the trial court had jurisdiction in this case to make both findings of fact and conclusions of law.[13] Moreover, as a conclusion of law, the district court's "finding" is supported by authority.[14] In Hunsaker v. Rhodehouse,[15] a case involving payment on a promissory note, this Court held that where one of two innocent parties must suffer from the wrongful act of a third party, loss should fall on the one whose conduct created circumstances enabling the third party to perpetrate the wrong and cause the loss.[16]

We conclude, upon reviewing the challenged findings of the district court that each is supported by substantial and competent, though conflicting, evidence. A judgment based on such evidence will not be set aside on appeal.[17] The judgment of the district court is hereby affirmed.

Costs to respondent.

DONALDSON, SHEPARD, and BAKES, JJ., and CALLISTER, District Judge, concur.

---

11. State v. Johnson, 92 Idaho 533, 536, 447 P.2d 10 (1968); McCormick, Evidence 19 (1954); G. Bell, Handbook of Evidence for the Idaho Lawyer 28 (1957).

12. This refers to the fact that appellant only received a part of the total tonnage of hay purchased from Clark.

13. I.C. § 5–907 provides: *"Immaterial errors disregarded.*—The court must, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the parties and no judgment shall be reversed or affected by reason of such error or defect."

14. *See* Restatement (Second) of Agency § 165 (1958).

15. 77 Idaho 119, 289 P.2d 319 (1955).

16. *See also* Harrison v. Auto Securities Co., 70 Utah 11, 257 P. 677, 57 A.L.R. 388 (1927).

17. Nysingh v. Warren, 94 Idaho 384, 488 P.2d 355 (1971); Williams v. Havens, 92 Idaho 439, 444 P.2d 132 (1968).