708 P.2d 900

P. Chad BAILEY, Plaintiff-Appellant,

v.

Stanley J. NESS, Jr., individually; Stanley J. Ness, Jr., and Robert W. McKinstry, dba Feed-Rite Systems, Inc., an Idaho corporation; Borg-Warner Leasing, a division of Borg-Warner Acceptance Corporation, a Delaware corporation; and Modern Mill Inc., an Indiana corporation, Defendants,

and

Mix-Mill Manufacturing Company, a Delaware corporation, Defendant-Respondent.

No. 15530.

Supreme Court of Idaho.

Nov. 1, 1985.

Mark J. Taylor, Rupert, for plaintiff-appellant.

J. Robert Alexander, Twin Falls, for defendant-respondent.

BISTLINE, Justice.

## HISTORY

Appellant Chad Bailey attended an agricultural fair at Idaho State University in Pocatello, Idaho, where he obtained information regarding Mix-Mill feed mill systems. Because Bailey was interested in obtaining a Mix-Mill feed mill system for use on his dairy farm, he wrote to respondent Mix-Mill inquiring about its product. On June 27, 1980, Mix-Mill wrote a letter to Bailey with numerous enclosed brochures describing Mix-Mill products and referring Bailey to Mr. Stan Ness and Feed-Rite Systems, Inc. for further assistance.[1] Bailey called Ness, who ultimately sent Jeff Allen, a salesman for Feed-Rite under Ness's direction.

In addition to the brochures sent to Bailey by Mix-Mill, Ness used a large folder provided by Mix-Mill to sell a Mix-Mill feed mill system to Bailey. The folder contained numerous blueprint diagrams of Mix-Mill feed mill systems, apparently designed and drafted by Mix-Mill, and often prepared for specific purchasers. Ultimately, Bailey entered into a contract with Feed-Rite Systems, Inc. on April 14, 1981 for the purchase of a Mix-Mill feed mill system. This lawsuit arises out of that contract, wherein Bailey alleges that the

---

1. The specific language contained in Mix-Mill's letter, in pertinent part, reads as follows:

   Mix-Mill has been supplying automatic feed processing systems to livestock and poultry producers all over the world for twenty-five years, *through authorized distributors who offer systems planning, installation, parts and service.*

   *The distributor in your territory, listed below, will be contacting you ....*
   Feed-Rite Systems, Inc., Route No. 2, Jerome Idaho 83338, phone 208/324–3964, Stan Ness. (Emphasis added.)

design and construction of the feed mill system was defective.

Although Mix-Mill equipment is called for in the Bailey agreement with Feed-Rite, and in the Bailey agreement with Borg-Warner Leasing, which financed the purchase, Mix-Mill equipment was never sold, delivered or installed in the Bailey feed mill. Other than two small accessory items, all of the essential equipment installed in the feed mill was the product of manufacturers other than Mix-Mill.

It is undisputed that Ness and Feed-Rite had no written distributor agreement with Mix-Mill. Ness had distributed Mix-Mill products since the fall of 1979, but because Ness had failed to pay Mix-Mill for products purchased, he had been placed on a cash basis only with Mix-Mill.

On May 15, 1981 Feed-Rite sent purchase orders to Mix-Mill for various pieces of equipment for Bailey's system. Mix-Mill immediately notified Ness that Mix-Mill would not manufacture or ship the items ordered until he made arrangements to pay for the product. Unable to purchase Mix-Mill equipment, Ness went to other manufacturers to purchase the components that were installed in the Bailey feed mill. Mix-Mill was never consulted concerning the design or construction of the Bailey feed mill.

Bailey's suit against Mix-Mill is premised, in part, upon there being an agency relationship between Ness and Mix-Mill. While conceding that Mix-Mill never expressly authorized Ness to design feed systems on its behalf, Bailey argues that Mix-Mill can still be found liable for acts done within the scope of Ness's *apparent* authority as an agent for Mix-Mill.

Both parties filed motions for summary judgment. The district court denied Bailey's motion and granted Mix-Mill's. Bailey appeals the district court's granting of summary judgment for Mix-Mill.

## I.A.

A summary judgment is only to be granted when all the facts contained in all the applicable pleadings, depositions, admissions, and affidavits have been construed most favorably to the nonmoving party, and it is clear that there is no genuine issue as to any material fact. *Crowley v. Lafayette Life Insurance Co.*, 106 Idaho 818, 821, 683 P.2d 854, 857 (1984). Further, motions for summary judgment should be granted with caution. *Steele v. Nagel*, 89 Idaho 522, 528, 406 P.2d 805, 808 (1965).

## B.

There are three separate types of agency, any of which are sufficient to bind the principal to a contract entered into by an agent with a third party, and make the principal responsible for the agent's tortious acts, so long as the agent has acted within the course and scope of authority delegated by the principal. The three types of agencies are: express authority, implied authority, and apparent authority. *Clark v. Gneiting*, 95 Idaho 10, 11–12, 501 P.2d 278, 279–80 (1972); *Hieb v. Minnesota Farmers Union*, 105 Idaho 694, 697, 672 P.2d 572, 575 (Ct.App.1983).

Both express and implied authority are forms of actual authority. Express authority refers to that authority which the principal has explicitly granted the agent to act in the principal's name. *Wiggins v. Barrett & Assoc., Inc.*, 295 Or. 679, 669 P.2d 1132, 1138 (1983). Implied authority refers to that authority "which is necessary, usual, and proper to accomplish or perform" the express authority delegated to the agent by the principal. *Clark, supra*, 95 Idaho at 12, 501 P.2d at 280.

Apparent authority differs from actual authority. It is created when the *principal* "voluntarily places an agent in such a position that a person of ordinary prudence, conversant with the business usages and the nature of a particular business, is justified in believing that the agent is acting pursuant to existing authority." *Id.* (footnote omitted); *Clements v. Jungert*, 90 Idaho 143, 152, 408 P.2d 810, 814 (1965); *Hieb, supra.* Apparent authority cannot be created by the acts and state-

ments of the agent alone. *Idaho Title Co. v. American States Insurance Co.*, 96 Idaho 465, 468, 531 P.2d 227, 230 (1975); *Clements, supra*, 90 Idaho at 152, 408 P.2d at 814. Finally, significant to this appeal, where the existence of an agency relationship is disputed—whether or not there is apparent authority on the agent's part to act as he acted—it is a *question for the trier of fact* to resolve from the evidence. *Clark, supra*, 95 Idaho at 12, 501 P.2d at 280; *John Scowcroft & Sons Co. v. Roselle*, 77 Idaho 142, 146, 289 P.2d 621, 623 (1955); *Thornton v. Budge*, 74 Idaho 103, 108, 257 P.2d 238, 241 (1953). A review of cases from other jurisdictions reveals that this is the majority rule. *See* 3 Am.Jur.2d *Agency* § 359 and cases cited therein.

## II.

■ Construing the facts in this case most favorably to Bailey, and applying the rules relating to agency, we hold that the district court erred in granting summary judgment. The following facts create, at the very least, a factual dispute of whether Ness did have apparent authority from Mix-Mill to assist in designing Bailey's feed system:

(1) Mix-Mill held itself out to Bailey as a designer of feed mill systems;

(2) Interested in acquiring a system from Mix-Mill, Bailey wrote Mix-Mill, which responded by sending numerous brochures to Bailey, *and telling him to contact Ness for further assistance;*[2] and finally,

(3) Bailey contacted Ness, who used numerous detailed brochures and blueprints of feed mill systems in selling such system to Bailey. The materials used by Ness had been prepared and sent to Ness by Mix-Mill.

Based upon these facts, Bailey stated in an affidavit under oath the following:

Based upon the representations in the letter and the brochures I believed that Mr. Ness was the agent of Defendant Mix-Mill Manufacturing Company, and that the company, with Mr. Ness, could design and construct a feed-mill system in a competent manner that would benefit my dairy operation.

That relying upon the representations of the said letter and brochures, I contacted Mr. Ness and entered into a contract for the construction of a Mix-Mill feed-mill system on my dairy farm.

I specifically relied upon Defendant Mix-Mill Manufacturing Company's representations to me that "Mix-Mill can design a totally automatic system that's right for your present and future feed-making and feed-distribution needs ...," in deciding to enter into the agreement with Mr. Ness.

It cannot be said as a matter of law that Bailey, acting with ordinary prudence, was unjustified in believing that Ness was acting pursuant to authority granted him by Mix-Mill. The issue is in dispute and is genuine. Accordingly, the granting of summary judgment was inappropriate. We therefore reverse and remand the district court.

## III.

In addition to alleging Mix-Mill's liability for the negligent acts of Ness in designing the defective feed-system, because of the agency relationship between the two—making Mix-Mill responsible for Ness's tortious acts within the scope of his authority—Bailey has also alleged independent tortious acts on Mix-Mill's part in (1) failing to properly train Ness, (2) failing to provide correct information to Ness concerning the design of the system, and (3) failing to inform Ness of the lack of availability of several components necessary to build Bailey's feed system. In granting summary judgment, the district court, in issuing its ruling from the bench, based its decision on the agency issue and did not attempt to

---

**2.** It is essential to refer to the exact language employed by Mix-Mill in its letter to Bailey. In that letter, Mix-Mill states that its *"authorized distributors"* provide *"systems planning"* among other services, and *identifies Ness as the appropriate distributor* whom Bailey should contact for further information.

address these other issues, except to state: "I don't know that they [Mix-Mill] were obligated to train their distributors to solve design problems."

This issue—whether Mix-Mill owed a duty of reasonable care to Bailey—is independent of the agency issue discussed above. It is an issue that was not decided by the trial court. Because we are reversing and remanding, this issue need not be addressed.

Reversed and remanded for further proceedings consistent with this opinion. Costs to appellant; no attorney's fees.

DONALDSON, C.J., and BAKES and HUNTLEY, JJ., concur.

SHEPARD, J., dissents without opinion.