796 P.2d 539

**B.J. THOMSON, Plaintiff–Appellant,**

**v.**

**SUNNY RIDGE VILLAGE PARTNER-SHIP, an Idaho partnership; Gordon Leishman, an individual, Defendants,**

**and**

**Edward J. McNelis, an individual, Defendant–Respondent.**

**No. 17775.**

Court of Appeals of Idaho.

Aug. 8, 1990.

Rehearing Denied Aug. 8, 1990.

Ringert, Clark, Harrington, Reid, Christenson & Kaufman, Boise, for appellant. Laura E. Burri argued.

DeMeyer & DeMeyer, Middleton, for respondent. Virginia R. DeMeyer argued.

SUBSTITUTE OPINION

The Court's prior opinion dated December 6, 1989, is hereby withdrawn.

BURNETT, Judge.[*]

This appeal comes to us from a judgment dismissing an action on a promissory note. The primary issue is whether the time period prescribed in a statute of limitation is extended with respect to one obligor on the note as a result of partial payments made by a co-maker after the note has gone into default. We also must decide whether the obligor in this case consented to, or ratified, payments causing an extension of the limitation period, or whether the obligor is bound by the payments under agency principles. For reasons stated below, we hold that the limitation period was not extended. Accordingly, we affirm the judgment of dismissal and award attorney fees on appeal to the respondent.

The relevant facts are as follows. In 1980, B.J. Thomson of Boise allowed her accountant, Robert Overstreet, to arrange some investment opportunities for her. After Thomson was repaid on her first loan to one of the accountant's clients, he asked her if she would be willing to lend money to another client, Gordon Leishman. Leishman was attempting to finance a low-income housing project in Nampa, to be known as Sunny Ridge Village. The accountant arranged for Thomson to lend Leishman $47,000 on an unsecured note, due and payable on August 21, 1981. The loan was made to the "Sunny Ridge Village Partnership," but no partnership entity was ever formed. Leishman's bank manager, Edward McNelis, co-signed the note. All the payments were made by Leishman to the accountant, and then passed on to Thomson.

On August 22, 1981, one day after the note came due, it remained unpaid. The accountant assured Thomson that full payment would be made, and Leishman did make small payments through November

of 1983. However, the note was continuously in default. Leishman departed the state in 1986, leaving $10,391.99 unpaid on the note. In 1987, Thomson filed this suit, naming as defendants the so-called Sunny Ridge Village Partnership as well as Leishman and McNelis individually. The purported partnership and Leishman filed no answer; a default judgment was entered against them. A bench trial was held on Thomson's claim against McNelis. Upon the conclusion of Thomson's case-in-chief, the district court granted a motion for involuntary dismissal on the ground that Thomson was barred by the five-year statutory period of limitation from bringing this action against McNelis. *See* I.C. § 5–216. This appeal followed.

We preface our analysis by noting that an involuntary dismissal during a bench trial, under I.R.C.P. 41(b), presents mixed questions of law and fact. We uphold factual findings made by the district court in granting the motion for involuntary dismissal, unless the findings are clearly erroneous. We review freely the court's conclusions of law. *Staggie v. Idaho Falls Consolidated Hospitals, Inc.*, 110 Idaho 349, 715 P.2d 1019 (Ct.App.1986).

The first issue raised by Thomson is whether the partial payments made by Leishman after the note was in default caused the limitation period to be extended as to McNelis. The district court concluded that they did not. We agree. A limitation period begins to run upon the accrual of the cause of action. *Singleton v. Pichon*, 102 Idaho 588, 590, 635 P.2d 254, 256 (1981). A cause of action against the obligor on a note accrues, in the case of a time instrument, on the day after maturity. I.C. § 28–3–122(1)(a). The limitation period can be extended by an obligor who makes a partial payment after the note is due. Such partial payment is deemed equivalent to a new promise by the obligor to satisfy the debt. I.C. § 5–238. In this case, however, the partial payments were not made by McNelis, the obligor in question; rather

[*] This opinion was prepared by BURNETT, J., and voted on by the Court prior to his resignation

July 16, 1990.

they were made by Leishman, a co-maker of the note.

Along with a majority of states, Idaho follows what is known as the American rule concerning payments by co-makers. The American rule provides that a partial payment by one of several debtors binds only the person making the payment and does not operate to take the debt out of a statute of limitation with regard to any other debtor. *Mahas v. Kasiska,* 47 Idaho 179, 276 P. 315 (1928). In *Mahas,* the court reasoned that because I.C. § 5–238 treats a payment of interest as the equivalent of a new promise, and because a promise binds only the person making it, so too a partial payment should extend a statutory period of limitation only as to the person who makes the payment. *Id.* at 185, 276 P. at 317.

Thomson suggests that the *Mahas* court confused a promise to pay with the payment itself. We are not persuaded. The nexus between a payment and a new written promise is explicit in I.C. § 5–238. Thomson also asserts that a payment should not be equated with a promise because a payment by one debtor benefits all debtors, while an individually renewed promise does not. It is true, of course, that all debtors potentially benefit from any payment reducing a debt; but it would be conceptually unsound to convert such a passive benefit into an active agency among the debtors, authorizing one debtor to make a new contract for all of them. If such authority were postulated as a matter of law, one party to a contract, acting alone, could alter the liabilities of others by extending the contract's legal effect beyond the time on which all the parties formerly had agreed. *See generally* 51 AM.JUR.2d. *Limitation of Actions* § 384. Consequently, we are not persuaded to abandon the American rule as expressed in *Mahas.*

There is, of course, a well-recognized family of exceptions to the rule. These exceptions are triggered when a non-paying co-debtor directs or requests that the payment be made; authorizes or consents to the payment; or ratifies such payment.

*See, e.g. Mobile Discount Corp. v. Price,* 99 Nev. 19, 656 P.2d 851 (1983). Here, Thomson asserts that McNelis knew of, and consented to, Leishman's late partial payments. However, the district court determined that Thomson failed to make a prima facie showing of such knowledge or consent. Thomson has conceded that there was no actual partnership between Leishman and McNelis. It is also clear from the record that Thomson was unable to prove McNelis knew of Leishman's payments. Neither is there evidence of acts by McNelis that might indicate ratification. In the absence of any such showing, we conclude that the exceptions to *Mahas* and the American rule were not triggered in this case.

Nonetheless, Thomson suggests that principles of agency law may remove this case from the American rule. She argues that it was within the accountant's authority, as a collection agent, to bind McNelis as a party to Leishman's late payments. We disagree.

■ The act of an agent binds his principal if the agent is acting within the scope of his actual authority. *See Muniz v. Schrader,* 115 Idaho 497, 767 P.2d 1272 (Ct.App.1989). The district court found that the accountant was an agent of Leishman, McNelis and Thomson. The accountant arranged the loan as a common agent, or intermediary, among the parties; and he thereafter transmitted to Thomson the payments he received from Leishman. Specifically, the district court found that the accountant performed as agent for McNelis the duties of "preparing, collecting, and disbursing" funds. However, the court also found that McNelis did not authorize the accountant to accept late loan payments. We think the court was saying, in essence, that McNelis did not authorize the accountant to revive an unenforceable obligation against him by accepting payments that would extend the statute of limitations. We agree.

■ Thomson further argues, however, that even if the accountant lacked actual authority from McNelis to accept the late payments, McNelis should still be bound

because the accountant was acting under apparent authority. It is well settled that a principal may be bound by an agent's acts which exceed the scope of the agent's actual authority, if the agent acted under apparent authority. *Bailey v. Ness,* 109 Idaho 495, 708 P.2d 900 (1985). Apparent authority is "created when the principal voluntarily places an agent in such a position that a person of ordinary prudence ... is justified in believing that the agent is acting pursuant to existing authority." *Id.,* 109 Idaho at 497, 708 P.2d at 902. Apparent authority can exist if an agent's actual authority is terminated, but third parties who deal with the agent are not notified. It also can exist if an agent is in a position which customarily carries with it certain duties and the agent performs those duties, even though they were not authorized. Thomson appears to argue both these circumstances occurred here. First, she contends the accountant should be deemed to have acted under apparent authority from McNelis when he accepted the late payments because she, Thomson, was not notified of the limited scope of the accountant's actual authority. Second, she suggests that because the acceptance of payments is a duty customarily performed by collection agents, the accountant did not need a grant of actual authority to bind McNelis with this act. Thus, according to Thomson, there are at least two grounds upon which apparent authority can be based. We are not persuaded.

While there are times a court will make a finding of apparent authority to protect third parties, this will only be done if the third party was not on notice of the scope of the agent's actual authority. *See, e.g., Bailey, supra.* Such is not the case here. Because the accountant was also Thomson's agent, the accountant's knowledge is imputed to her. Consequently, Thomson had the imputed knowledge that Leishman, not McNelis, made the late payments and that McNelis did not authorize their acceptance. Consequently, Thomson was on constructive notice of the scope of the actual agency authority, and no apparent authority was created. We conclude, as did the district court, that Thomson did not meet her burden of proving agency. The complaint against McNelis was properly dismissed.

■ Finally, we turn to the issue of attorney fees on appeal. McNelis seeks an award under I.C. § 12–121. We will not award attorney fees under that statute where a genuine question of law has been presented. *Hales v. King,* 114 Idaho 916, 923, 762 P.2d 829, 836 (Ct.App.1988) (review denied). Here, Thomson raised a genuine question of law as to the continuing viability of the *Mahas* decision and its applicability to the facts of this case. Even though we were not persuaded by Thomson's arguments, we do not consider the appeal frivolous. However, because this is an action on a promissory note, we deem I.C. § 12–120 to be applicable. Accordingly, we award attorney fees to McNelis under that statute, in an amount to be determined in accordance with I.A.R. 41(d).

The judgment of the district court is affirmed. Costs and attorney fees to respondent, Edward McNelis.

WALTERS, C.J., and SWANSTROM, J., concur.