936 P.2d 697

**Jilynn LANDVIK, a minor by Dan Landvik and Debbie LANDVIK, her guardians ad litem, and Dan Landvik and Debbie Landvik, individually, Plaintiffs–Appellants–Cross–Respondents,**

v.

**Victor HERBERT dba Bicycle City and Victor Herbert, individually, Defendant–Respondent–Cross–Appellant,**

and

**Aden Martin, individually, Westwood Mall Associates, a partnership, Isaac Bernstein, Isaac Perlstein, Martin Friedman, Fischel Bernstein, Munkas Tora Academy, individually and as partners in Westwood Mall Associates and Does I through XX, Defendants.**

No. 22330.

Court of Appeals of Idaho.

April 24, 1997.

McDevitt, Meyers & Thomsen, Pocatello, for appellants. M. Jay Meyers argued, Pocatello.

Quane, Smith, Howard & Hull, Pocatello, for respondents. Kumen L. Taylor argued, Pocatello.

LANSING, Judge.

Jilynn Landvik appeals from an order granting summary judgment to Victor Herbert on Landvik's claim that as a result of Herbert's alleged negligence, she was injured while attending a concert.

## I. FACTS AND PROCEDURAL HISTORY

Victor Herbert owns and operates Bicycle City, a retail store in Pocatello which sells, among other things, bicycles and skateboards. Bicycle City also operates a "skate park" where people can engage in skateboarding. In 1992, Aden Martin and Brandon West, two high school students, were employed at Bicycle City. They developed plans to organize a concert and sell tickets as a profit-making venture. Martin and West approached Herbert about holding the concert at the Bicycle City skate park, but Herbert denied this request. Martin and West then obtained permission to hold the concert at a shopping center, the Westwood Mall. They arranged for several bands to perform at the concert. With Herbert's permission, Martin and West distributed advertising flyers which stated that advance tickets for the concert could be purchased at Bicycle City, posted flyers on Bicycle City's premises and sold tickets during working hours. Martin and West also designed and produced concert tickets and, unbeknownst to Herbert, used Bicycle City's check deposit stamp on

the back of each ticket to thwart unauthorized reproduction of the tickets. The evening of the concert, Martin and West created two posters which were displayed in the mall near the site of the concert. These posters stated, "Bicycle City, Westwood Mall and Promoters of this concert are not responsible for any damages or injuries." Herbert did not know that Martin and West were displaying these posters using Bicycle City's name.

Jilynn Landvik, who was then fourteen years old, attended the concert with friends. During the concert she participated, along with others, in what is known as stage diving, in which individuals throw themselves from an elevated stage on top of individuals below, who are expected to catch the "divers". Landvik fell to the ground and suffered personal injuries. As a result, Landvik and her parents brought suit against West, Martin, Herbert, and the owners of the Westwood Mall.

Herbert moved for summary judgment, on the ground that he had not been involved in any way in the sponsorship or organization of the concert and therefore owed no duty of care to those who attended the event. The trial court granted the motion for summary judgment and awarded attorney fees to Herbert under I.C. § 12–121 based on the court's finding that the action against Herbert was pursued frivolously. Although claims against other defendants remain pending, the court certified this partial summary judgment dismissing the claim against Herbert as a final judgment pursuant to I.R.C.P. 54(b). Landvik now appeals from the summary judgment and from the award of attorney fees. Herbert cross-appeals on the issue of attorney fees, asserting that the court should also have awarded attorney fees against Landvik's attorney as a sanction pursuant to I.R.C.P. 11(a)(1).

## II.  ANALYSIS

### A.  Summary Judgment Was Proper

■ Summary judgment under I.R.C.P. 56(c) is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When a summary judgment

motion has been supported by depositions, affidavits or other evidence, the adverse party "may not rest upon the mere allegations or denials of that party's pleadings, but the party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." I.R.C.P. 56(e). *See also Gardner v. Evans,* 110 Idaho 925, 929, 719 P.2d 1185, 1189 (1986). When a court considers a motion for summary judgment, all facts are to be liberally construed in favor of the nonmoving party, and the court must draw all reasonable inferences in favor of the party resisting the motion. *G & M Farms v. Funk Irrigation Co.,* 119 Idaho 514, 517, 808 P.2d 851, 854 (1991); *Sanders v. Kuna Joint School Dist.,* 125 Idaho 872, 876 P.2d 154 (Ct.App.1994). "[T]he motion must be denied if evidence is such that conflicting inferences may be drawn therefrom, and if reasonable people might reach different conclusions." *Olsen v. J.A. Freeman Co.,* 117 Idaho 706, 720, 791 P.2d 1285, 1299 (1990). However, a mere scintilla of evidence or only a slight doubt as to the facts is insufficient to withstand summary judgment; there must be sufficient evidence upon which a jury could reasonably return a verdict for the party opposing summary judgment. *Corbridge v. Clark Equipment Co.,* 112 Idaho 85, 87, 730 P.2d 1005, 1007 (1986); *Petricevich v. Salmon River Canal Co.,* 92 Idaho 865, 871, 452 P.2d 362, 368 (1969).

■ On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.,* 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct.App.1986).

In the present case, Landvik argues that there was sufficient evidence to raise a genuine issue as to whether Herbert was a sponsor of the concert and therefore owed a duty of care to those attending. Alternatively, Landvik asserts that Herbert is vicariously liable for the acts of Martin and West because their conduct in organizing and sponsoring the concert was within the scope of their apparent authority as employees of Herbert's business, Bicycle City.

### 1. Herbert was not a sponsor of the concert

No liability arises under the law of negligence unless the defendant owed a duty of care to the plaintiff. *Bowling v. Jack B. Parson Companies,* 117 Idaho 1030, 1032, 793 P.2d 703, 705, (1990). *See also Brooks v. Logan,* 127 Idaho 484, 489–90, 903 P.2d 73, 78–79 (1995). Landvik posits that such a duty arose here because Herbert had a direct role as a sponsor of the concert. As the district court held, however, this assertion is unsupported by the evidence. Before Herbert filed his motion for summary judgment, his role with respect to the concert was thoroughly explored in depositions and other discovery. Herbert, Martin and West all testified in deposition that Herbert did not help plan, organize, produce, sponsor or finance the concert, did not furnish any equipment or facilities for the event and did not receive any proceeds from the ticket sales.

Landvik argues that a jury, nonetheless, could reasonably infer that Herbert was a concert sponsor from the facts that (1) he allowed West and Martin to sell concert tickets during their working hours at Bicycle City; (2) he knew that West and Martin were distributing flyers stating that advance tickets could be purchased at Bicycle City and allowed them to post such flyers on Bicycle City's premises; (3) Martin and West used Bicycle City's check deposit stamp on the back of the tickets; (4) the posters which Martin and West displayed at the concert site mentioned Bicycle City as one of the entities which would not be liable for damages or injuries sustained at the concert; and (5) Martin used some of his share of the profits from the concert to pay his account at Bicycle City for merchandise he had purchased there.

Landvik's reliance on the use of Bicycle City's name on the posters displayed at the concert and the use of its check deposit stamp on the back of the tickets is misplaced. Herbert, Martin and West all testified that these actions were taken by Martin and West without Herbert's knowledge or approval. Therefore, they do not evidence any involvement by Herbert in the concert production. With regard to Martin's use of a portion of his profits from the concert to pay his account at Bicycle City, we think it self-evident that this does not support an inference that Herbert was a sponsor of the event because he "profited" from it. Were the rule otherwise, any business where Martin spent a portion of his concert profits could unwittingly become an *ex post facto* "sponsor" of the event.

The only remaining evidence upon which Landvik relies is the evidence that Herbert allowed Martin and West to sell tickets on the Bicycle City premises and knew that they were distributing advertising flyers, including posting the flyers on the Bicycle City premises, which stated that tickets could be purchased at that store. This is insufficient to prevent summary judgment on the issue whether Herbert was a sponsor or promoter. The district court held, and we agree, that the mere fact that a business allows the advertisements of an event to be posted on its premises or allows the sale on its premises of tickets to the event does not constitute the business a sponsor of the event or impose upon the business a duty of care to prevent injury to those who attend.

### 2. Herbert was not vicariously liable under a theory of apparent authority

We next consider Landvik's alternative argument that West and Martin acted within the scope of their apparent authority as Bicycle City employees and thereby rendered Herbert vicariously liable for their conduct in sponsoring the concert.

We begin by noting there are three types of agency: express authority, implied authority, and apparent authority. *Bailey v. Ness,* 109 Idaho 495, 497, 708 P.2d 900, 902 (1985); *Clark v. Gneiting,* 95 Idaho 10, 11–12, 501 P.2d 278, 279–80 (1972). Express and implied authority are forms of actual authority. Express authority exists when the principal has explicitly authorized the agent to act in the principal's name, and implied authority is that "'which is necessary, usual, and proper to accomplish or perform' the express authority delegated to the agent by the principal." *Bailey, supra, quoting Clark v. Gneiting,* 95 Idaho 10, 12, 501

P.2d 278, 280 (1972). Apparent authority may arise when actual authority is absent. Apparent authority is created when the principal "voluntarily places an agent in such a position that a person of ordinary prudence, conversant with the business usages and the nature of a particular business, is justified in believing that the agent is acting pursuant to existing authority." *Clark*, 95 Idaho at 12, 501 P.2d at 280. *See also Bailey, supra; Tri–Circle, Inc. v. Brugger Corp.*, 121 Idaho 950, 955, 829 P.2d 540, 545 (Ct.App.1992); *Hieb v. Minnesota Farmers Union*, 105 Idaho 694, 697, 672 P.2d 572, 575 (Ct.App.1983). "Apparent authority differs from express and implied authority in that it is not based on the words and conduct of the principal toward the agent, but on the principal's words and conduct toward a third party." *Tri–Circle*, 121 Idaho at 954–55, 829 P.2d at 544–45. Consequently, apparent authority cannot arise from the acts and statements of the agent alone; it must be based upon the principal's words and conduct. *Id.; Idaho Title Co. v. American States Insurance Co.*, 96 Idaho 465, 468, 531 P.2d 227, 230 (1975).

The doctrine of apparent authority arose in the arena of contract law and addresses circumstances in which an agent, acting without actual authority, may nonetheless bind the principal to a contract entered into by the agent with a third party. *See Bailey, supra; John Scowcroft & Sons Co. v. Roselle*, 77 Idaho 142, 289 P.2d 621 (1955); *Tri–Circle, supra*. Neither this Court nor the Idaho Supreme Court has applied the doctrine of apparent authority to a claim that a principal is liable for injuries resulting from the agent's tortious conduct. Some jurisdictions, however, have utilized the doctrine of apparent authority in tort cases. *See for example Crinkley v. Holiday Inns, Inc.*, 844 F.2d 156, 166–67 (4th Cir.1988); *Marcoux v. Northside Realty Associates, Inc.*, 207 Ga.App. 99, 427 S.E.2d 72 (1993); *Jackson v. Righter*, 891 P.2d 1387 (Utah 1995). The doctrine, as applied in the tort context, is described in RESTATEMENT (SECOND) OF AGENCY (1958) as follows:

(1) A master or other principal is subject to liability for torts which result from reliance upon, or belief in, statements or other conduct within an agent's apparent authority.

(2) Unless there has been reliance, the principal is not liable in tort for conduct of a servant or other agent merely because it is within his apparent authority or apparent scope of employment.

*Id.*, § 265

One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.

*Id.*, § 267, Comment (a) to § 267 states:

The mere fact that acts are done by one whom the injured party believes to be the defendant's servant is not sufficient to cause the apparent master to be liable. There must be such reliance upon the manifestation as exposes the plaintiff to the negligent conduct.

As articulated in these sections of the RESTATEMENT, application of the apparent authority doctrine to a tort claim requires that the plaintiff show not only that the principal's conduct gave rise to apparent authority but also that the plaintiff's injury resulted from the plaintiff's reliance upon that appearance of authority. This is consonant with application of the doctrine in the contract context, where "apparent authority involves an element of reliance on the part of the third party." *Hilt v. Draper*, 122 Idaho 612, 618, 836 P.2d 558, 564 (Ct.App.1992). Consistent with the RESTATEMENT's formulation, jurisdictions utilizing the apparent authority doctrine in tort cases have required reliance by the plaintiff. It is stated, for example, in *Jackson v. Righter*, 891 P.2d at 1392:

"To be vicariously liable for the acts of an employee under a theory of apparent authority, an employer must conduct itself in such a way as to clothe its employee with apparent authority to perform the torts committed *and there must be reasonable reliance on that apparent authority on the*

*part of the injured party."* (Emphasis added.)

This reliance requirement precluded recovery by the plaintiff in *Wilson v. Good Humor Corp.*, 757 F.2d 1293 (D.C.Cir.1985), a wrongful death action. The plaintiff's daughter had been killed while crossing the street to purchase ice cream from an independent contractor of Good Humor Corp. The Court of Appeals affirmed a directed verdict for the defendant on the plaintiff's apparent authority theory because the plaintiff presented no evidence that any of the adults responsible for the child had relied on Good Humor's general business reputation or its reputation for safety in permitting the child to buy ice cream from the vendor.

Similarly, in *Mauch v. Kissling*, 56 Wash. App. 312, 783 P.2d 601 (1989), the absence of reliance was one of the bases upon which the appellate court affirmed summary judgment in favor of the defendant in an action arising from the death of a child. The plaintiff's son had been flying to a boy scout camp with a scoutmaster in the scoutmaster's airplane and, during that flight, the airplane crashed. The plaintiff sought to hold the Boy Scouts of America liable on a theory of apparent authority, but the court held that summary judgment for the defendant was appropriate because, *inter alia*, the plaintiff presented no evidence that she relied upon any actions or statements of Boy Scouts of America in deciding to allow her son to ride with the scoutmaster. *See also Marcoux v. Northside Realty Assoc., Inc.*, 207 Ga.App. 99, 427 S.E.2d 72 (1993).

■ We do not determine whether under Idaho law, the doctrine of apparent authority may be used to create tort liability on the part of a principal, for even if the doctrine is applied here, the summary judgment in favor of Herbert was appropriate. Accepting, *arguendo*, Landvik's assertion that Herbert's actions cloaked Martin and West with apparent authority, there is no evidence that Jilynn Landvik relied upon this apparent authority in deciding to attend the concert or to participate in stage diving. Uncontroverted evidence establishes that Landvik never spoke with Herbert about the concert, had never visited Bicycle City, and did not see the posters on display there. Landvik saw at her school one of the flyers advertising the event and testified that she believed that Bicycle City was a sponsor of the concert. She did not base this belief on statements in the flyer, however, but upon what her friends had told her. Most importantly, according to her testimony, Landvik attended the concert because her friends were going and because she wanted to hear the bands. Once there, she relied upon her friends' judgment and her own judgment as to whether stage diving was safe and whether she should participate. There is not a scintilla of evidence that Landvik's reported belief that Bicycle City was a sponsor of the event influenced in any way her decision to attend the concert or to engage in stage diving. Accordingly, the criteria for tort liability based upon apparent authority are not met here.

In summary, there is no evidence upon which a jury reasonably could find that Herbert sponsored the concert at which Landvik sustained injury, nor is there any evidence that Landvik relied upon the alleged apparent authority of West and Martin. When a defendant establishes that the plaintiff is unable to prove one or more elements of a claim upon which the plaintiff will bear the burden of proof at trial, the defendant is entitled to summary judgment. *Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 272–73, 869 P.2d 1365, 1367–68 (1994); *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 720, 791 P.2d 1285, 1299 (1990); *Badell v. Beeks*, 115 Idaho 101, 102, 765 P.2d 126, 127 (1988). Accordingly, the order of the district court granting summary judgment to Herbert is affirmed.

## B. Attorney Fees and Sanctions

### 1. Attorney fees and sanctions in the trial court

After obtaining summary judgment, Herbert sought an award of costs and fees against Landvik pursuant to I.C. § 12–121 and sanctions against Landvik's counsel pursuant to I.R.C.P. 11(a)(1). The district court granted attorney fees under § 12–121 but denied Rule 11(a)(1) sanctions. On appeal, Landvik argues that the court erred in awarding fees under this statute and, alter-

natively, that even if some attorney fees were warranted, the court should not have granted fees incurred before Landvik completed the discovery that illuminated Herbert's role with respect to the concert. In his cross-appeal, Herbert argues that the district court erred in failing to award sanctions against Landvik's attorney pursuant to I.R.C.P. 11(a)(1).

▮ Under Idaho Code § 12–121 and I.R.C.P. 54(e)(1), attorney fees may be awarded in any civil action where the court finds that the case has been "brought, pursued or defended frivolously, unreasonably or without foundation." Such an award is subject to reversal only if there has been an abuse of discretion by the trial court. *Savage Ditch Water Users v. Pulley*, 125 Idaho 237, 250, 869 P.2d 554, 567 (1993); *Sun Valley Shopping Center v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

▮ Rule 11(a)(1) provides in part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one (1) licensed attorney of record of the state of Idaho, in the attorney's individual name, whose address shall be stated before the same may be filed.... The signature of an attorney or party constitutes a certificate that the attorney or party has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

This rule does not duplicate I.C. § 12–121, and circumstances that justify an award of fees under that statute do not necessarily call for imposition of Rule 11 sanctions. *See Sun Valley Shopping Center, Inc.*, 119 Idaho at 96, 803 P.2d at 1002; *Young v. Williams*, 122 Idaho 649, 654, 837 P.2d 324, 329 (Ct.App. 1992). Rule 11 applies only to the signing of a "pleading, motion or other paper," and its "central feature is the certification established by the signature." *Id.* at 653, 837 P.2d at 328. An "attorney is required to perform a prefiling inquiry into both the facts and the law involved to satisfy the affirmative duty imposed by Rule 11." *Riggins v. Smith*, 126 Idaho 1017, 1021, 895 P.2d 1210, 1213 (1995). Reasonableness under the circumstances, and a duty to make reasonable inquiry prior to filing a pleading or other paper, is the appropriate standard to apply when evaluating an attorney's conduct. *Durrant v. Christensen*, 117 Idaho 70, 74, 785 P.2d 634, 638 (1990). Whether a pleading, motion or other signed document is sanctionable must be based on an assessment of the knowledge of the relevant facts and law that reasonably should have been acquired at the time the document was submitted to the court. *Young*, 122 Idaho at 653, 837 P.2d at 328.

▮ This Court has held that Rule 11 sanctions ought not be applied to make a "lump sum compensatory attorney fee award." *Conley v. Looney*, 117 Idaho 627, 630, 790 P.2d 920, 923 (Ct.App.1990); *Kent v. Pence*, 116 Idaho 22, 24, 773 P.2d 290, 292 (Ct.App.1989). Rather, Rule 11(a)(1) is "a court management tool" which should be exercised narrowly. *Conley*, 117 Idaho at 631, 790 P.2d at 924; *State of Alaska ex rel. Sweat v. Hansen*, 116 Idaho 927, 929, 782 P.2d 50, 52 (Ct.App.1989). In reviewing the trial court's action on a motion for Rule 11 sanctions, we apply an abuse of discretion standard. *Riggins*, 126 Idaho at 1020, 895 P.2d at 1213; *Sun Valley Shopping Center*, 119 Idaho at 94, 803 P.2d at 1000.

▮ In awarding attorney fees to Herbert pursuant to I.C. § 12–121 and denying Rule 11 sanctions, the district court made the following observations:

This court ... does not feel that the initial complaint was frivolous or that it was filed with the intent to harass. Given the evidence that was on hand at the time of the filing, Plaintiffs' counsel did conduct reasonable inquiry required by Rule 11(a)(1) and sanctions should not be imposed.... However, as discovery proceeded and depositions were taken, it became apparent, or should have become apparent, that Herbert had no personal involvement. Defendant requested various dismissals and Plaintiffs were not persuaded by his argument that the allegations were without foundation. Although the initial complaint was not filed to harass Herbert and Bicycle City, the Plaintiffs should have dismissed Herbert. Furthermore, Plaintiffs were somewhat reckless in their allegations about Herbert's involvement in the Concert. The allegations were unfounded and without merit with respect to the Defendant, Victor Herbert and Bicycle City and should have been dismissed. As a result Herbert is entitled to reasonable attorney fees and costs pursuant to Idaho Code § 12–121, I.R.C.P. 54(d)(1), as the prevailing party and on the grounds the Plaintiff filed and pursued a claim against Herbert and Bicycle that was frivolous and without merit.

We find no error in the trial court's determination that initiation of the action against Herbert was not frivolous or unreasonable since the advertising flyers, concert tickets and posters displayed at the concert gave reason to suspect that Bicycle City had a role in sponsoring or producing the concert. When the complaint was filed, the information as to who actually sponsored the concert was in the exclusive possession of the defendants. Formal discovery to ferret out that information was appropriate.

We also agree with the trial court that once Landvik had an opportunity to fully explore the issue in discovery, it was abundantly clear that Herbert had engaged in no activity that would have imposed upon him any responsibility to the concert attendees, and the action against him should have been dismissed. As this Court explained in *Ortiz v. Reamy*, 115 Idaho 1099, 1101, 772 P.2d 737, 739 (Ct.App.1989):

The terms "brought" and "pursued," used disjunctively in Rule 54(e)(1), signify that a nonprevailing litigant may suffer an award of fees if a claim which is arguably meritorious when initially asserted is rendered frivolous, unreasonable or without foundation by subsequent events or information during the pendency of the suit.

In such a circumstance, the fee award should encompass "only the fees reasonably incurred by the prevailing party after the claim had ceased to be arguably meritorious." *Id.* Therefore, the trial court's award of all attorney fees incurred by Herbert from the outset of the litigation was inappropriate and inconsistent with its determination that the litigation was not frivolous at the outset. The court ought to have awarded only that portion of Herbert's attorney fees attributable to legal services rendered after the point at which it became frivolous and unreasonable for Landvik to persist in pursuing the claim against Herbert. Therefore, we remand this matter to the district court for further findings and redetermination of the attorney fee award under I.C. § 12–121 and I.R.C.P. 54(e)(1).

■ We next address Herbert's assertion that the district court should have awarded Rule 11 sanctions against Landvik's attorney for the amount of attorney fees incurred by Herbert throughout the litigation because the attorney did not make a reasonable inquiry into the facts before filing the complaint. Herbert argues that the prefiling inquiry by plaintiff's attorney should have included an interview of Herbert, which would have clarified that he had no involvement with the concert. We are of the view, however, that such a prefiling inquiry of a prospective adversary, to which responses may be self-serving and less than candid, is no substitute for an opportunity for formal discovery where answers must be provided under oath and relevant documentary evidence produced. Therefore, we do not agree with Herbert's assertion that, on this record, the trial court abused its discretion by failing to award Rule 11 sanctions for the filing of the complaint.

We conclude, however, that the trial court did not adequately consider whether Herbert would be entitled to Rule 11 sanctions based upon the attorney's signing of motions, briefs or other papers subsequent to the complaint. As the excerpt from the district court's decision quoted above discloses, after finding that Landvik's counsel conducted a reasonable inquiry before filing the complaint, so that Rule 11 sanctions were not warranted for that pleading, the court ended its discussion of Rule 11 sanctions without considering that rule's application to other papers filed by Landvik's counsel such as Landvik's brief in opposition to Herbert's motion for summary judgment and Landvik's motion for reconsideration of the district court's summary judgment decision. Therefore, on remand the district court is directed to consider whether documents filed by Landvik's attorney, other than the complaint, violated the standards of I.R.C.P. 11(a)(1) such that sanctions against the attorney should be ordered.

### 2. Attorney fees and sanctions on appeal

■ Herbert requests attorney fees on appeal pursuant to I.C. § 12–121. An award under that statute may be made only if we find that the appeal was entirely frivolous, unreasonable or without foundation. *Magic Valley Radiology Assoc., P.A. v. Professional Business Services, Inc.,* 119 Idaho 558, 563, 808 P.2d 1303, 1308 (1991); *Matter of Kolouch,* 128 Idaho 186, 198, 911 P.2d 779, 791 (Ct.App.1996); *McCandless v. Carpenter,* 123 Idaho 386, 393, 848 P.2d 444, 451 (Ct. App.1993). Landvik has raised a legitimate issue with respect to the amount of attorney fees awarded by the district court and has obtained relief on appeal with respect to that award. The appeal was not frivolous or unreasonable in its entirety; therefore no attorney fees will be awarded under I.C. § 12–121.

Herbert also seeks an award of sanctions on appeal against Landvik's counsel pursuant to I.A.R. 11.1. Under that rule, sanctions may be awarded where the appellate court finds that an attorney has signed appellate briefs or other documents that are not "well grounded in fact and ... warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law" or that a document was interposed for an "improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." I.A.R. 11.1.

■ We conclude that such sanctions are appropriate with respect to that portion of the appeal challenging the dismissal of Landvik's claim against Herbert. The argument by Landvik's counsel that a jury question is presented as to whether Herbert was an actual organizer or sponsor of the concert is utterly without support in the evidence. The inference of Herbert's involvement, which he urges can be drawn from the Bicycle City name on the flyers, tickets and posters was thoroughly dispelled by the testimony not merely of Herbert but also of the actual concert organizers, West and Martin. Although counsel's argument that the apparent authority doctrine should be extended to tort cases is not unreasonable, the argument for application of the doctrine in this case ignores the complete absence of any evidence on a critical element, reliance by the plaintiff. Both appellants' opening brief and the reply brief omitted any mention of the reliance issue even though it was the primary focus of the respondent's brief. Landvik's counsel finally touched upon the question of evidence to demonstrate reliance during oral argument only in response to direct questions from the bench, and offered no reasonable explanation as to how reliance could be found in this case. Landvik's attorneys should have recognized that a challenge to the district court's order dismissing the action as against Herbert would not be well grounded in fact, in existing law, or even in the extension of law that was urged by them. This Court has no reason to believe that the appeal was taken in bad faith or for any improper purpose, but it appears that an excess of zeal in the well-intended pursuit of their clients' interests led counsel beyond the bounds of legitimate appellate advocacy. Therefore, sanctions under I.A.R. 11.1 are awarded in an amount to be determined following submission by Herbert of a memoran-

dum of attorney fees incurred on the appeal in the manner provided under I.A.R. 41.

### III. CONCLUSION

The district court's summary judgment dismissing Landvik's claim against Herbert is affirmed. The district court's order granting attorney fees to Herbert under I.C. § 12–121 and denying sanctions under I.R.C.P. 11(a)(1) is vacated and the matter is remanded to the district court for reduction of the award of attorney fees and for further consideration of the request for Rule 11 sanctions. No attorney fees are awarded on appeal pursuant to I.C. § 12–121, but sanctions pursuant to I.A.R. 11.1 are awarded in an amount to be determined. Costs on appeal are granted to the respondent pursuant to I.A.R. 40.

WALTERS, C.J., and PERRY, J., concur.