206 P.3d 473

Michael Anthony JONES, individually and as guardian ad litem for RHYS Alexander Jones (DOB 8/20/99) and Moira Eibhlin Jones (DOB 7/04/02), Plaintiffs–Appellants–Cross Respondents,

and

Lynne Royer, as natural mother of Lori Marie Jones, deceased, and Kim Royer, as step-father of Lori Marie Jones, deceased, husband and wife, and Harold Bowers, Plaintiffs–Cross Respondents,

v.

HEALTHSOUTH TREASURE VALLEY HOSPITAL, Defendant–Respondent–Cross Appellant,

and

Anesthesiology Consultants of Treasure Valley, PLLC, Deborah Jenkins, M.D., Thomas Lark, M.D., B & B Autotransfusion Services, Inc., an Idaho corporation, Haemonetics Corporation, a Massachusetts corporation; and John Does I through V, Defendants.

Lynne Royer, as natural mother of Lorie Marie Jones, deceased, Plaintiff–Appellant,

and

Michael Anthony Jones, individually and as guardian ad litem for RHYS Alexander Jones (DOB 8/20/99) and Moira Eibhlin Jones (DOB 7/4/02), and Kim Royer, as step-father of Lori Marie Jones, deceased, and Harold Bowers, Plaintiffs,

v.

Healthsouth Treasure Valley Hospital, Defendant–Respondent,

and

Anesthesiology Consultants of Treasure Valley, PLLC, Deborah Jenkins, M.D., Thomas Lark, M.D., B & B Autotransfusion Services, Inc., an Idaho corporation, Haemonetics Corporation, a Massachusetts corporation, and John Does I through V, Defendants.

Harold Bowers, Plaintiff–Appellant,

and

Michael Anthony Jones, individually and as guardian ad litem for RHYS Alexander Jones (DOB 8/20/99) and Moira Eibhlin Jones (DOB 7/4/02), Lynne ROYER, as natural mother of Lori Marie Jones, deceased, and Kim Royer, as step-father of Lori Marie Jones, deceased, husband and wife, Plaintiffs,

v.

Healthsouth Treasure Valley Hospital, Defendant–Respondent,

and

Anesthesiology Consultants of Treasure Valley, PLLC, Deborah Jenkins, M.D., Thomas Lark, M.D., B & B Autotransfusion Services, Inc., an Idaho corporation, Haemonetics Corporation, a Massachusetts corporation, and John Does I through V, Defendants.

Nos. 33905, 33907, 33908.

Supreme Court of Idaho.

Jan. 30, 2009.

Hepworth, Lezamiz & Janis, Chtd., for appellants. John Joseph Janis, Boise, argued.

Powers Thomson, P.C., Boise, for Respondents. Raymond D. Powers argued.

Comstock & Bush, Boise, for cross respondents, appellant Royer.

Mahoney Law, PLLC, Boise, for cross respondents, appellant Bowers.

BURDICK, Justice.

This case requires the Court to consider whether a hospital can be found vicariously liable for the negligence of an independently contracted cell saver technician under Idaho's doctrine of apparent agency. Appellants/Cross–Respondents Michael Anthony Jones, individually and as guardian ad litem for Rhys Alexander Jones and Moira Eibhlin Jones; Lynne Royer, as natural mother of Lori Jones, deceased; and Harold Bowers, as natural father of Lori Jones, deceased (collectively Appellants), appeal from the district court's award of summary judgment in favor of Respondent/Cross–Appellant Healthsouth

Treasure Valley Hospital (TVH). TVH cross-appeals from the district court's denial of discretionary costs. We hold that a hospital may be found liable under Idaho's doctrine of apparent authority for the negligence of independent personnel assigned by the hospital to perform support services. As such, we reverse the district court's award of summary judgment and remand for a determination of whether Appellants presented sufficient evidence in support of their claim of apparent agency to survive summary judgment dismissal. Based on our ruling, we decline to consider TVH's cross-appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Sometime before August 2004, Lori Jones began seeing Dr. Timothy Doerr to treat her back problems. Dr. Doerr recommended that Mrs. Jones undergo lumbar spine surgery, which would require a two to three day recovery stay in the hospital. Dr. Doerr gave Mrs. Jones the option to have the surgery performed at either TVH or St. Alphonsus Regional Medical Center, but recommended TVH because the patient-to-staff ratio was lower and because TVH had a private chef. TVH is not a full service hospital, but rather a surgery center. Both Mrs. Jones and her husband, Michael Jones, visited TVH, and ultimately chose to have the surgery performed there.

Dr. Doerr elected to have Mrs. Jones's blood "salvaged" during surgery, a process by which blood is collected from the patient intra-operatively and made available for reinfusion into the patient's body using a cell saver machine. Dr. Doerr issued an order for B & B Autotransfusion Services, Inc. to provide the cell saver machine and the cell saver technician for Mrs. Jones's surgery. During the applicable period in question, B & B performed all autotransfusion services for TVH pursuant to an independent contractor agreement. Under this agreement, TVH was responsible for providing B & B with storage space for its cell saver machine as well as the autotransfusion supplies for surgery, and B & B was responsible for providing the cell saver technician and all disposable items related to autotranfusion. TVH paid B & B a flat fee for its services, and then either billed the patient or the insurance company directly for the autotransfusion services performed by B & B. Although the cell saver technicians were employees of B & B, TVH's consent forms did not indicate their status as independent contractors. TVH furnished B & B's cell saver technicians with hospital scrubs that all members of the surgical team were required to wear. These scrubs contained no logos or other identifying information distinguishing between hospital employees and independent contractors.

On August 2, 2004, Mrs. Jones underwent lumbar spine surgery at TVH. Jeri Kurtz, a certified cell saver technician employed by B & B, operated the cell saver machine used during the surgery. After Mrs. Jones's blood had been collected, cleaned, and delivered into the reinfusion bag, Dr. Thomas Lark,[1] the attending anesthesiologist, arranged for the reinfusion process to take place via gravity. Shortly thereafter, Dr. Lark was temporarily relieved by another anesthesiologist Dr. Deborah Jenkins.[2] In order to speed up the reinfusion process, Dr. Jenkins placed a "pressure cuff" around the bag. The reinfusion bag contained a written warning that applying a pressure cuff could lead to death. Both Ms. Kurtz and Dr. Lark noticed the cuff around the bag when they reentered the surgery room, but did nothing to remove it. The pressure cuff eventually squeezed the air remaining in the bag into Mrs. Jones's body, causing her to sustain a fatal air embolism. Mrs. Jones was twenty-eight years old at the time of her death.

Appellants individually filed medical malpractice and wrongful death suits against various defendants, including TVH, claiming TVH was vicariously liable for the negligence of the two anesthesiologists and the cell sav-

---

1. Dr. Lark was employed by Anesthesiology Consultants of Treasure Valley, PLLC, an independent contractor providing anesthesiology services for TVH.

2. Dr. Jenkins was employed by Medical Doctor Associates, Inc., a company that Anesthesiology Consultants of Treasure Valley subcontracted with to help fulfill its anesthesiology staffing obligations at TVH.

er technician under the theory of apparent agency. Before trial, TVH moved for summary judgment, claiming Appellants had failed to establish through expert testimony that TVH had breached the local standard of care for a hospital as required in Idaho. Plaintiff Royer filed a cross-motion for partial summary judgment on the issue of apparent agency, and Plaintiffs Jones and Bowers joined in this argument. The district court determined that Idaho had not extended apparent agency liability to tort claims and, therefore, declined to grant Appellant's motion for partial summary judgment. Accordingly, the district court granted TVH's motion for summary judgment. Appellants appeal from this order.

## II. STANDARD OF REVIEW

When reviewing an order for summary judgment, this Court applies the same standard of review as was used by the trial court in ruling on the motion for summary judgment. *See Cristo Viene Pentecostal Church v. Paz,* 144 Idaho 304, 307, 160 P.3d 743, 746 (2007). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). "If there is no genuine issue of material fact, only a question of law remains, over which this Court exercises free review." *Cristo,* 144 Idaho at 307, 160 P.3d at 746 (quoting *Infanger v. City of Salmon,* 137 Idaho 45, 47, 44 P.3d 1100, 1102 (2002)).

"It is axiomatic that upon a motion for summary judgment the non-moving party may not rely upon its pleadings, but must come forward with evidence by way of affidavit or otherwise which contradicts the evidence submitted by the moving party, and which establishes the existence of a material issue of disputed fact." *Zehm v. Associated Logging Contractors, Inc.,* 116 Idaho 349, 350, 775 P.2d 1191, 1192 (1988). This Court liberally construes all disputed facts in favor of the nonmoving party, and all reasonable inferences drawn from the record will be drawn in favor of the nonmoving party. *Cristo,* 144 Idaho at 307, 160 P.3d at 746. If

reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented, then summary judgment is improper. *McPheters v. Maile,* 138 Idaho 391, 394, 64 P.3d 317, 320 (2003).

## III. ANALYSIS

### A. This Court previously extended the doctrine of apparent agency to tort claims in *Bailey v. Ness,* 109 Idaho 495, 708 P.2d 900 (1985).

First, Appellants argue that the district court erred in determining that Idaho does not recognize the doctrine of apparent agency as a basis of liability for tort claims. In support of their argument, Appellants direct this Court's attention to *Bailey v. Ness,* 109 Idaho 495, 708 P.2d 900 (1985). In *Bailey,* this Court said:

There are three types of agency, any of which are sufficient to bind the principal to a contract entered into by an agent with a third party, *and make the principal responsible for the agent's tortious acts,* so long as the agent has acted within the course and scope of authority delegated by the principal. The three types of agency are: express authority, implied authority, and apparent authority.

109 Idaho at 497, 708 P.2d at 902 (emphasis added). The district court determined that this language was merely dicta since *Bailey* was a breach of contract matter. As such, the district court relied on *Landvik v. Herbert,* 130 Idaho 54, 936 P.2d 697 (Ct.App. 1997), in which the Court of Appeals held that no appellate court in Idaho had ever applied the doctrine of apparent authority to create tort liability on the part of the principal. *Landvik,* 130 Idaho at 59, 936 P.2d at 702. Based in part on this holding, the district court denied Appellants' motion for partial summary judgment on the issue of apparent agency and subsequently awarded summary judgment in favor of TVH.

In order to determine whether the district court erred, we find it necessary to review our decision in *Bailey.* In that case, the buyer of a feed mill system brought breach of contract and defective construction and design claims against Stan Ness, d/b/a Feed–

Rite Systems, Inc., seeking to hold Ness liable for $37,000.00 in damages to the system. Comp. & Demand for Jury Trial; Amended Compl. & Demand for Jury Trial.[3] The buyer also filed suit against Mix–Mill, Inc., a manufacturer of feed mill systems, claiming, among other things, that Mix–Mill was vicariously liable for Ness's negligence in designing the defective feed system under the doctrine of apparent authority. *Id.* The district court granted summary judgment in favor of Mix–Mill on the issue of apparent authority, and we reversed, holding that there was a factual dispute as to whether Ness had apparent authority from Mix–Mill to assist in designing the buyer's feed system. *Bailey,* 109 Idaho at 498, 708 P.2d at 903. Thus, we not only recognized that tort liability could be imposed under the doctrine of apparent authority, but actually extended the doctrine of apparent authority to a tort claim in that case. As such, *Bailey* holds that a principal can be held liable for an agent's tortious acts under Idaho's doctrine of apparent authority.

TVH argues that *Bailey* is inapplicable because it dealt with "apparent authority" rather than "apparent agency." Specifically, TVH argues that apparent authority presupposes an existing agency relationship, whereas apparent agency does not. However, there was no preexisting agency relationship in *Bailey.* It was undisputed in that case that Ness was not an actual agent of Mix–Mill. *Bailey,* 109 Idaho at 497, 708 P.2d at 902. Furthermore, comment (a) to section 2.03 of the Restatement (Third) of Agency sets forth that apparent authority "does not presuppose the present or prior existence of an agency relationship," but rather the doctrine can be applied to actors who appear to be agents but who actually are not. *Restatement (Third) of Agency* § 2.03, comment (a) (2006). Comment (b) to that section also explains that many jurisdictions use the terms "apparent authority" and "apparent

agency" interchangeably. *Id.* at § 2.03, comment (b). Thus, our holding in *Bailey* applies to tort claims brought under the doctrine of apparent agency as well.

■ Therefore, we agree with Appellants that the doctrine of apparent agency extends to tort claims in Idaho.

> **B. The hospital may be found vicariously liable under Idaho's doctrine of apparent authority for the negligence of independent personnel assigned by the hospital to perform support services.**

■ Appellants argue that Ms. Kurtz was an apparent agent of TVH, and therefore the hospital should be held vicariously liable for her negligence attributable to Mrs. Jones's death. "Generally, a principal is immune from liability for the negligence of 'an independent contractor, or that of its employees, in the performance of the contracted services.'" *Estate of Cordero v. Christ Hosp.,* 403 N.J.Super. 306, 958 A.2d 101, 104 (Ct. App.Div.2008) (quoting *Basil v. Wolf,* 193 N.J. 38, 935 A.2d 1154, 1169 (2007)). *Restatement (Second) of Torts,* § 409 (1965). However, there are exceptions to the general rule, one being the exception at issue referred to as "apparent authority."[4] Under section 429 of the Restatement (Second) of Torts, liability is imputed to a principal "who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants...." *Id.* at § 429. When determining liability in a situation such as this when an agency relationship is alleged, the Restatement (Second) of Torts defers to the Restatement of Agency. *Id.* at § 429, comment c. Section 2.03 of the Restatement (Third) of Agency defines "apparent authority" as "the power held by an agent or other actor to affect a principal's legal relations

---

3. To verify that the buyer did in fact bring a tort claim against Mix–Mill, we reviewed the buyer's complaint and amended complaints.

4. Although Appellants argue that TVH is vicariously liable under the doctrine of "apparent agency," we will refer to the doctrine as "apparent authority," its formal title under the Restate-

ment (Third) of Agency throughout the remainder of our opinion. As set forth in Part III.A, "apparent authority" and "apparent agency" may be used interchangeably in this context when applying the Restatement (Third) of Agency.

with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Restatement (Third) of Agency*, § 2.03 (2006). The rationale for imposing liability under apparent authority is so "[a] principal may not choose to act through agents whom it has clothed with the trappings of authority and then determine at a later time whether the consequence of their acts offers an advantage." *Id.* at § 2.03, comment c.

Based on case law from the majority of jurisdictions that have extended apparent authority to medical malpractice claims, TVH argues that apparent authority does not extend beyond the hospital/physician context. However, we see no reason why hospitals should be treated differently from any other entity for the purposes of imputing liability under the doctrine of apparent authority. To begin with, there is nothing in the language from the Restatement (Second) of Torts § 429 or the Restatement (Third) of Agency § 2.03 that suggests hospital liability is limited to the negligence of physicians. In fact, comment (c) to Restatement (Third) of Agency § 2.03 sets forth that apparent authority applies to "*any set of circumstances* under which it is reasonable for a third party to believe that an agency has authority, so long as the belief is traceable to manifestations of the principal." *Id.* at § 2.03 (emphasis added). Furthermore, other jurisdictions have recognized that a hospital may be found vicariously liable for the negligence of other individuals performing support services necessary to complete the patient's treatment. In *York v. Rush–Presbyterian–St. Luke's Medical Center*, 222 Ill.2d 147, 305 Ill.Dec. 43, 854 N.E.2d 635 (2006), the Illinois Supreme Court stated:

> If ... a patient does select a particular physician to perform certain procedures within the hospital setting, this does not alter the fact that a patient may nevertheless still reasonably rely upon the hospital to provide the remainder of the support services necessary to complete the patient's treatment. Generally, it is the hospital, and not the patient, which exercise control not only over the provision of necessary support services, but also over the personnel assigned to provide those services to the patient during the patient's hospital stay. *To the extent the patient reasonably relies upon the hospital to provide such services, a patient may seek to hold the hospital vicariously liable under the apparent agency doctrine for the negligence of personnel performing such services even if they are not employed by the hospital.*

305 Ill.Dec. 43, 854 N.E.2d at 661–62 (emphasis added). The Kentucky Court of Appeals also recognized that liability extends beyond the hospital/physician context, stating:

> [I]t appears to us that when a hospital has received a patient, under whatever circumstance, and has undertaken treatment, that patient is owed a duty by the hospital through its employees and staff, *including independent staff personnel*, to exercise appropriate care to provide for the patient's well-being and to promote his cure. A breach of this duty may expose the hospital to liability in tort. Any lesser rule would be insensible to the true role of a hospital as an institution in present day society.

*Williams v. St. Claire Med. Ctr.*, 657 S.W.2d 590, 597 (Ky.Ct.App.1983) (emphasis added). In *Williams*, the Kentucky Court of Appeals reversed the lower court's award of summary judgment in favor of the hospital, holding the appellant had presented sufficient evidence to survive summary judgment dismissal of appellant's claim that the hospital was vicariously liable for the negligence of a nurse anesthetists—a non-physician—under the doctrine of apparent authority. *Id.* at 596. More recently, the Superior Court of New Jersey noted that courts of other jurisdictions recognize hospital liability under the doctrine of apparent authority when the "hospital has established and staffed facilities or departments through which patients receive specialized care from *medical professionals* with whom they do not have a prior or ongoing relationship-emergency rooms, operating rooms and anesthesiology and radiology departments." *Estate of Cordero v. Christ Hosp.*, 403 N.J.Super. 306, 958 A.2d 101, 107 (Ct.App.Div.2008) (emphasis added).

TVH raises various arguments in opposition to this Court extending Idaho's doctrine of apparent authority to medical malpractice claims in general. First, TVH argues that the extension of apparent authority will defeat the purpose of Idaho's Medical Malpractice Act (Act). I.C. §§ 6–1001 to—1013. TVH argues that although I.C. § 6–1012 mentions vicarious liability, the legislature did not contemplate that a hospital could be held vicariously liable for negligence committed by those not under the hospital's control. TVH contends that a more reasonable inference is that the legislature intended that a hospital could be held vicariously liable under the doctrine of respondeat superior rather than the doctrine of apparent authority. However, there is no language in the statute limiting the basis from which vicarious liability claims may be made. Idaho Code § 6–1012 states that a claimant may bring an action against a healthcare provider or any person[5] vicariously liable for the provider's negligence. Although the term "vicarious liability" is not defined under the Act, it is defined generally as "[l]iability that a supervisory party bears for the actionable conduct of a subordinate or associate based on the relationship between the two parties." *Blacks Law Dictionary* 934 (8th ed.2004). Section 429 of the Restatement (Second) of Torts, which imposes tort liability to a principal under the doctrine of apparent agency, states as follows:

> One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.

*Restatement (Second) of Torts* 429 (1965). Pursuant to this section, the hospitals liability arises out of the apparent agency relationship it creates with its independent contrac-

tor and thus falls under the definition of vicarious liability. Furthermore, the Restatement (Third) of Agency specifically states that a principal is vicariously liable for a tort committed by an agent acting with apparent authority. *Restatement (Third) of Agency* 7.08 (2006). As such, we find that the extension of apparent agency to medical malpractice claims is consistent with the Acts provision for vicarious liability.

TVH also argues that if the Court extends the doctrine of apparent authority, plaintiffs will no longer have to prove that health care providers breached the applicable standard of care through expert testimony as required by sections 6–1012 and 1013 of the Act. However, our extension of the doctrine does not change the standard for establishing negligence on the part of a healthcare provider; rather, it provides an additional basis from which the hospital's liability can arise. When a hospital is being sued in its capacity as an individual healthcare provider, the plaintiff is still required to prove that the hospital breached the applicable standard of care through expert testimony. On the other hand, when a hospital is being sued in its capacity as the principal, the plaintiff is required to prove that the hospital's agent is a healthcare provider as required under the statute, and that the agent breached the applicable standard of care. Thus, the hospital is held vicariously liable for its agent's negligence to the same extent as if the hospital itself breached the standard of care under the Act. Therefore, we find that our extension of apparent authority does not conflict with the Act's standard for establishing negligence on the part of the healthcare provider.

■ In addition, TVH argues that if the doctrine of apparent authority is extended to medical malpractice claims, it would effectively reinstate joint and several liability. In support of its argument, TVH directs our attention to I.C. § 6–803, under which the Idaho legislature has limited the application

---

**5.** The term "person" is not defined under I.C. § 6–1012. The only other reference to "person" found in the statute is in regard to "injury to or death of a person." Although a hospital is not a natural person, it generally falls under the defini-

tion of "person" as "an entity ... that is recognized by law as having the rights and duties as a human being." *Black's Law Dictionary* 1178 (8th ed.2004).

of joint and several liability to two situations: 1) where a party was acting in concert with another, or 2) where a party was acting as an agent or servant of another party. I.C. § 6–803(3), (5). In respect to the latter, TVH argues that the legislature only intended that joint and several liability be extended to *actual* agents. However, the statute only requires that the person be "acting as *an* agent." I.C. § 6–803(5) (emphasis added). Because the statute does not define "agent," we must apply the plain meaning of the term. This Court has recognized that there are three types of agency—express authority, implied authority, and apparent authority, *see Bailey,* 109 Idaho at 497, 708 P.2d at 902. Therefore, the term "agent" encompasses express agents, implied agents, and apparent agents under Idaho law. As such, we find TVH's argument to be without merit.

■ Based on our analysis set forth in Parts III.A and III.B, we hold that a hospital may be found vicariously liable under Idaho's doctrine of apparent authority for the negligence of independent personnel assigned by the hospital to perform support services. Therefore, we reverse the district court award of summary judgment in favor of TVH.

### C. Elements of apparent agency.

The district court's award of summary judgment was based on the incorrect legal conclusion that Idaho had not extended the doctrine of apparent authority to tort claims. Because the parties stipulated that TVH was not negligent in its own right, the district court found no basis under Idaho law for which TVH could be held liable. As such, the district court did not go on to analyze the facts of the case to determine whether Appellants had presented sufficient evidence for their claim of apparent authority against TVH to submit to the jury. Rule 56(c) of the Idaho Rules of Civil Procedure sets forth that summary judgment shall be awarded "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). As such, we must remand the case back to the district court for a determination of whether or not the pleadings, depositions, and admissions on file, together with the affidavits, show that there is a genuine issue of material fact regarding Appellants' claim of apparent authority.

Before we remand the case, however, we seek to clarify the elements that Appellants must establish in order to survive summary judgment dismissal. The standard for apparent authority stated in section 2.03 of the Restatement (Third) of Agency and section 429 of the Restatement (Second) of Torts has two essential elements: 1) conduct by the principal that would lead a person to reasonably believe that another person acts on the principal's behalf, *i.e.,* conduct by the principal "holding out" that person as its agent; and 2) acceptance of the agent's service by one who reasonably believes it is rendered on behalf of the principal. *Estate of Cordero v. Christ Hosp.,* 403 N.J.Super. 306, 958 A.2d 101, 106 (Ct.App.Div.2008).

■ TVH argues that we should affirm the district court's award of summary judgment because Appellants have failed to establish any evidence of reliance in support of their claim of apparent authority. However, the Restatement (Third) of Agency, which superseded the Restatement (Second) of Agency in 2006, only requires that Appellants establish Mrs. Jones reasonably believed that Ms. Kurtz was an agent of TVH. Specifically, section 2.03 of the Restatement (Third) of Agency sets forth that a plaintiff is required to show a reasonable belief that the actor had authority to act on behalf of the principal that is traceable to the principal's manifestations to the plaintiff. *Restatement (Third) of Agency,* § 2.03 (2006). The doctrine of agency by estoppel, on the other hand, requires a plaintiff to demonstrate *justifiable reliance* and a detrimental change in position. *Id.* at § 2.05 and accompanying comments. The Restatement (Second) of Agency did not distinguish between apparent authority and agency by estoppel; thus, most jurisdictions recognizing apparent authority as a basis for hospital liability under the Restatement (Second) of Agency require plaintiffs to demonstrate the more stringent element of reliance to establish liability.

However, as the Superior Court of New Jersey recently explained:   .

> There is a notable difference between sections 2.03 [of the Restatement (Third) of Agency] and 429 [of the Restatement (Second) of Torts] and the standard for apparent authority provided in section 267 of the Restatement (Second) of Agency (1958), which includes an element of reliance.  Reliance is an element of apparent authority under sections 2.03 and 429 only to the extent that it is subsumed in the requirement that the person accepting an agent's services do so in the "reasonable belief" that the service is rendered in behalf of the principal.

*Estate of Cordero*, 958 A.2d at 106, n. 3. Therefore, under the Restatement (Third) of Agency, a plaintiff is only required to prove reasonable belief, rather than justifiable reliance, to satisfy a claim of apparent authority.

Furthermore, we find that a standard of "reasonable belief" rather than "reliance" more fairly comports with Idaho's prior case law regarding apparent authority.  In *Bailey v. Ness*, 109 Idaho 495, 708 P.2d 900 (1985), we stated that "[apparent authority] is created when the *principal* 'voluntarily places an agent in such a position that a person of ordinary prudence, conversant with the business usages and the nature of a particular business, is *justified in believing* that the agent is acting pursuant to existing authority.'"   109 Idaho at 497, 708 P.2d at 902 (citing *Clements v. Jungert*, 90 Idaho 143, 152, 408 P.2d 810, 814 (1965)) (italics provided, emphasis added).  Although the portions regarding "business usages" and "the nature of a particular business" are irrelevant to the case at hand, this language demonstrates that we have only required that a person be "justified in believing" the agent was acting pursuant to existing authority, rather than relying on the agent's services, in order to establish apparent authority.  We find no persuasive reasoning for adopting the more stringent standard of reliance for cases where the principal is a hospital.

Therefore, we remand the case back to the district court for a determination of whether Appellants presented sufficient evidence in support of their claim of apparent agency against TVH to survive summary judgment dismissal based on the elements set forth above.

## VII.   CONCLUSION

For the reasons set forth above, we reverse the district court's award of summary judgment to TVH, and remand the case for a determination of whether Appellants presented sufficient evidence for their claim of apparent agency to survive summary judgment dismissal.  Based on our holding, we decline to consider TVH's cross-appeal regarding the district court's dismissal of its request for discretionary costs.

Chief Justice EISMANN and Justices J. JONES, W. JONES and HORTON, concur.