IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 42958-2015

| | | |
|---|---|---|
| BEATRICE L. SHATTO as Personal Representative of the ESTATE OF HARVEY A. WAINIO; BEATRICE L. SHATTO, individually; and JENNIFER LYNN VIVEROS, individually, | ) ) ) ) ) | Boise, August 2016 Term<br><br>2016 Opinion No. 111 |
| Plaintiffs-Appellants, | ) ) | Filed: November 1, 2016 |
| v. | ) ) | Stephen W. Kenyon, Clerk |
| SYRINGA SURGICAL CENTER, LLC d/b/a SYRINGA MEDICAL CENTER, | ) ) ) | |
| Defendant-Respondent, | ) ) | |
| and | ) ) | |
| RICHARD M. ALLEN, D.P.M., | ) ) | |
| Defendant. | ) ) ) | |

Appeal from the District Court of the Second Judicial District of the State of Idaho, in and for Nez Perce County. Hon. Jeff M. Brudie, District Judge.

The judgment of the district court is affirmed.

Mark D. Kamitomo, The Markam Group, Inc., P.S., Spokane, Washington, argued for appellants.

Markus W. Louvier, Evans, Craven & Lackie P.S., Spokane, Washington, argued for respondent.

---

EISMANN, Justice.

This is an appeal out of Nez Perce County from a summary judgment in favor of the Defendant, Syringa Surgical Center, LLC, in a medical malpractice action. We affirm the judgment of the district court.

# I.
## Factual Background.

Harvey Wainio's primary care physician referred him to Dr. Richard M. Allen, a podiatrist, because of a bunion on his right foot. Mr. Wainio first met with Dr. Allen at his office on January 4, 2010, and during that meeting Dr. Allen recommended surgery. Mr. Wainio agreed to have the surgery, and he again met with Dr. Allen at his office on January 18, 2010, for a preoperative visit. Dr. Allen performed the surgery on January 21, 2010, at Syringa Surgical Center, LLC ("the Surgical Center"). Three days later, Mr. Wainio began having symptoms that caused him to seek emergency medical treatment. Due to insufficient blood flow to his right foot and an infection, his foot became necrotic, requiring amputation of the foot on February 3, 2010.

On March 9, 2011, Mr. Wainio and Beatrice Shatto, his wife, filed this action against Dr. Allen and the Surgical Center seeking to recover damages. Mr. Wainio passed away on July 9, 2012. On January 15, 2013, an amended complaint was filed substituting his estate as a party and adding a wrongful death claim on behalf of Ms. Shatto and Jennifer Viveros, his daughter.

From February or March until the first part of August in 2009, Dr. Allen was admittedly addicted to prescription drugs. In September, he was admitted into an inpatient treatment program. He also signed a stipulation with the Idaho Board of Podiatry which set forth disciplinary terms that included treatment requirements and drug testing. Based upon that stipulation, the Board of Podiatry issued an order effective October 1, 2010, which set forth the agreed-upon disciplinary terms. Dr. Allen successfully completed inpatient treatment on November 17, 2009, and the treatment provider recommended that he resume normal working duties on November 30, 2009. He complied with all of the disciplinary terms ordered by the Board of Podiatry.

On September 10, 2014, the Surgical Center moved for summary judgment. It contended that it was not liable for Dr. Allen's alleged negligence and that no expert witness had testified that the Surgical Center was negligent. In response, the Plaintiffs contended that the Center was liable for Dr. Allen's alleged negligence under the doctrines of actual and apparent authority and that it was negligent in failing to detect that he had, in prior years, diverted and misused prescription drugs. The Plaintiffs also filed a motion seeking to introduce their expert's opinion that Dr. Allen had relapsed in January 2010.

2

The motions were briefed and argued, and on November 26, 2014, the district court issued its decision and order granting the Surgical Center's motion for summary judgment. The court stated that the only alleged negligence of Dr. Allen was the assertion that during his two examinations of Mr. Wainio conducted in Dr. Allen's office prior to the surgery, he had negligently determined that Mr. Wainio had a *pedal pulse* in his right foot, which is pulse of the dorsalis pedis artery that supplies the portion of the foot on which the surgery was performed. The court held that at the time of the alleged negligence, Dr. Allen was not acting in the capacity of an agent of the Surgical Center or as a member of its medical staff.

Beatrice Shatto and Dr. Allen later resolved the claims between them. On January 26, 2015, they filed a stipulation stating that they had resolved Ms. Shatto's claim against Dr. Allen and that Jennifer Viveros's claims had expired as a matter of law because she had died. On January 20, 2015, the district court dismissed the claims against Dr. Allen, and on January 30, 2015, it entered a judgment dismissing the claims against the Surgical Center. Ms. Shatto then timely appealed.

## II.
### Did the District Court Err in Concluding that Ms. Shatto's Vicarious Liability Claim Against the Surgical Center Was Based Solely Upon Dr. Allen's Presurgical Examination of Mr. Wainio?

In its decision granting the Surgical Center's motion for summary judgment, the district court stated that the "Plaintiffs have alleged no negligent conduct by Dr. Allen at any time on the day of, or during, the surgical procedure itself." On appeal, Ms. Shatto contends that the district court erred because she "also alleged Dr. Allen's negligence in conducting the surgery on January 21, 2010, in the first instance" and that such negligence "is imputed to Respondent because Dr. Allen was either an actual or apparent agent of Respondent at the time he performed the surgery." In her trial brief filed on February 24, 2014, Ms. Shatto had stated under the heading Legal Argument, "Plaintiff has the burden of proving that Dr. Richard Allen breached the standard of care for a podiatrist in Lewiston, Idaho on January 4, 2010, or more specifically, during the preoperative evaluation during which Dr. Allen purported to palpate or otherwise feel pedal pulses in Mr. Wainio's right foot." In her pretrial statement of claims filed on February 20, 2014, Ms. Shatto stated:

3

In January 21, 2010, Dr. Allen performed surgery on Mr. Wainio's right foot at Syringa Surgical Center to treat a bunion. Prior to performing surgery, Dr. Allen failed to evaluate whether Mr. Wainio had adequate blood flow or arterial circulation to his foot to promote healing following the bunion surgery. The failure to evaluate Mr. Wainio's circulation was a violation of the undisputed standard of care required of Dr. Allen prior to performing the surgery.

There was no statement that Dr. Allen violated the standard of care by performing the surgery.

Ms. Shatto does not contend that Dr. Allen performed the surgery in a negligent manner. His claimed negligence with respect to the surgery was performing it at all. The contention is that it was negligent to perform the surgery based upon Mr. Wainio's condition, which Dr. Allen should have known had he conducted a proper presurgery evaluation. We need not address whether this claim is separate from the claimed negligence in the presurgery evaluations because the Surgical Center's alleged liability for both of them is based upon the assertion that the Surgical Center is vicariously liable for Dr. Allen's alleged negligence. Therefore, we will simply address that issue.

## III.
### Did the District Court Err in Granting Summary Judgment Dismissing Ms. Shatto's Claim that the Surgical Center Was Vicariously Liable for Dr. Allen's Alleged Negligence?

When reviewing on appeal the granting of a motion for summary judgment, we apply the same standard used by the trial court in ruling on the motion. *Infanger v. City of Salmon*, 137 Idaho 45, 46–47, 44 P.3d 1100, 1101–02 (2002). We construe all disputed facts, and draw all reasonable inferences from the record, in favor of the non-moving party. *Id.* at 47, 44 P.3d at 1102. Summary judgment is appropriate only if the evidence in the record and any admissions show that there is no genuine issue of any material fact regarding the issues raised in the pleadings and that the moving party is entitled to judgment as a matter of law. *Id.* If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review. *Id.*

The Surgical Center was a limited liability company, and Dr. Allen was a member of the company and owned a one-third interest in it. Decisions regarding the management and conduct of the company's business were made by majority vote of the three members. It is undisputed that Dr. Allen was not an employee of the Surgical Center. He had an independent podiatric

4

practice. Ms. Shatto contends that the Surgical Center is vicariously liable for Dr. Allen's alleged negligence under the doctrines of express and apparent authority.

**Actual authority.** "The three types of agencies are: express authority, implied authority, and apparent authority." *Bailey v. Ness*, 109 Idaho 495, 497, 708 P.2d 900, 902 (1985). "Both express and implied authority are forms of actual authority. Express authority refers to that authority which the principal has explicitly granted the agent to act in the principal's name." *Id*. Implied authority is "that which is necessary, usual, and proper to accomplish or perform the main authority expressly delegated to an agent." *Clark v. Gneiting*, 95 Idaho 10, 12, 501 P.2d 278, 280 (1972) (footnote omitted).

Ms. Shatto asserts that the Surgical Center "conferred actual authority on Dr. Allen to act on its behalf in conducting surgeries in its facilities, and to earn a profit for the facility." Ms. Shatto does not present any argument or authority supporting a claim that a person permitted to use a facility becomes an agent of the facility. Likewise, the fact that it was to Dr. Allen's economic advantage to utilize the Surgical Center would not make him an agent of the Center when he uses it.

Ms. Shatto also asserts that Dr. Allen was an agent of the Surgical Center because he was a member of its medical staff. "A physician is not an agent of a hospital merely because he or she is on the medical staff of the hospital." *Jacoves v. United Merch. Corp.*, 9 Cal. App. 4th 88, 104, 11 Cal. Rptr. 2d 468, 477 (1992). Ms. Shatto contends that there were provisions in the medical staff bylaws which showed that Dr. Allen was the Surgical Center's agent because of the Center's right to control the administration of surgical services performed by Dr. Allen at the Center.

The Surgical Center was an ambulatory surgical center with one operating room. It was not a hospital and did not provide 24-hour care to inpatients. If a patient suffered a cardiac arrest or other emergency while at the facility, someone would call 911 for an ambulance to transport the patient to a hospital located one and one-half miles away, which had agreed to take such patients. Use of the facility was not limited to the three member physicians. It was used by other podiatric surgeons, plastic surgeons, and oral surgeons. Every surgeon who used the Surgical Center, including its members, had to be accepted as a member of the Center's medical staff. All members of the medical staff had to agree to be bound by the policies, bylaws, rules, and regulations of the Surgical Center.

"As between the parties to the [agency] relationship, there must be a meeting of the minds in establishing the agency, and the consent of both the principal and the agent is necessary to create an agency relationship although such consent may be implied rather than expressed." 3 Am. Jur. 2d *Agency* § 14 (2013). We have held that, in determining whether someone is the agent of the alleged principal, "[t]he important factor is the control or right of control reserved by the employer over the functions and duties of the agent." *Koch v. Elkins*, 71 Idaho 50, 57, 225 P.2d 457, 462 (1950). "It is axiomatic that an agency relationship is created where one who hires another has retained a contractual right to control the other's manner of performance." *Sharp v. W.H. Moore, Inc.*, 118 Idaho 297, 303, 796 P.2d 506, 512 (1990). "The right to control the manner of performance is essential to prove an agency, and it is the existence of the right to control, not its exercise, which is decisive." 3 Am. Jur. 2d *Agency* § 18 (2013); *accord Hayward v. Yost*, 72 Idaho 415, 432–33, 242 P.2d 971, 981–82 (1952); *Van Vranken v. Fence-Craft*, 91 Idaho 742, 747, 430 P.2d 488, 493 (1967).

Ms. Shatto relies upon provisions set forth in the Surgical Center's medical staff bylaws to argue that Dr. Allen was an agent of the Center. None of the provisions she cites purports to permit the Center to exercise control over a surgeon's decision to perform a surgery, over the manner in which the surgeon performs the surgery, or the surgeon's pre-operative and post-operative care of the patient. In fact, the bylaws expressly state, "The [Medical] Staff shall be responsible for the pre-surgical, surgical, and follow-up care of all patients who are under his/her care during their time at the Center." There is absolutely no evidence that would show that Dr. Allen was acting as an agent of the Surgical Center with respect to his decision to perform surgery upon Mr. Wainio or to his performance of that surgery.

Ms. Shatto argues that the Surgical Center is a member-managed limited liability company and that the authority granted its members by Idaho Code section 30-6-407(2) makes them agents of the limited liability company. That statute provides:

> (2) In a member-managed limited liability company, as among the members, the following rules apply:
> (a) The management and conduct of the company are vested in the members.
> (b) Each member has equal rights in the management and conduct of the company's activities.
> (c) A difference arising among members as to a matter in the ordinary course of the activities of the company may be decided by a majority of the members.

6

(d) An act outside the ordinary course of the activities of the company may be undertaken only with the consent of all members.

(e) The operating agreement may be amended only with the consent of all members.

"A member is not an agent of a limited liability company solely by reason of being a member." I.C. § 30-6-301(1). Idaho Code section 30-6-301(1) does not limit its application to manager-managed limited liability companies. Therefore, the fact that, as a member of the limited liability company, Dr. Allen had the right to participate in the management of the Surgical Center did not make him an agent of the Center in the conduct of his medical practice, including the decision to perform a surgery at the Center and performance of that surgery. The copy of the operating agreement for the Surgical Center that is in the record states that Dr. Ozeran, a plastic surgeon who was a member of the limited liability company, was appointed as manager and medical director to handle the day-to-day business and affairs of the Surgical Center. He was specifically authorized to conduct business on behalf of the company.

Ms. Shatto also points out that each of the members of the Surgical Center were required by the operating agreement to continue operating a full-time medical practice, which was defined as "maintaining a regular medical practice for at least 51% of the time during a consecutive three month period, with the intention of continuing the practice at that level or higher." A member who failed to do so was required to sell his interest in the company to the company and/or other members for a price established pursuant to a described formula. Ms. Shatto does not explain how this provision would make the members agents of the Surgical Center. Therefore, the district court did not err in failing to find that there was a genuine issue of material fact supporting Ms. Shatto's claim that the Surgical Center was liable for the conduct of Dr. Allen under the doctrine of actual authority.

**Apparent authority.** In *Jones v. HealthSouth Treasure Valley Hospital*, 147 Idaho 109, 206 P.3d 473 (2009), we held that "a hospital may be found vicariously liable under Idaho's doctrine of apparent authority for the negligence of independent personnel assigned by the hospital to perform support services." *Id*. at 116, 206 P.3d at 480. The doctrine has two essential elements: "1) conduct by the principal that would lead a person to reasonably believe that another person acts on the principal's behalf . . .; and 2) acceptance of the agent's service by one who reasonably believes it is rendered on behalf of the principal." *Id*.

In arguing that the facts would lead a person to reasonably believe that Dr. Allen was rendering medical care on behalf of the Surgical Center, Ms. Shatto first states, "Mr. Wainio was referred to Dr. Allen by another physician. Dr. Allen's office is in the same building directly below Syringa. Allen's office and Syringa are connected by a stairwell." The other physician referred Mr. Wainio to Dr. Allen, not to the Surgical Center. Mr. Wainio testified that prior to his first office visit with Dr. Allen, he had neither been to nor heard of the Surgical Center and he did not "choose to see Dr. Allen in any way, shape or form because of his relationship to Syringa Surgical Center." Thus, the alleged conduct of the Surgical Center that would allegedly lead a person to reasonably believe that Dr. Allen was acting in the Surgical Center's behalf was that the Center located its facility in the same building and one floor above Dr. Allen's office. Being located in the same building does not make one entity the apparent agent of another.

The other alleged conduct of the Surgical Center relates to three forms that Mr. Wainio signed in Dr. Allen's office on January 18, 2010. All three forms had the heading of "Syringa Surgery Center."[1] One form, which Mr. Wainio filled out before he signed, was a patient information sheet, which included his identifying and contact information. Another form set forth the patient's rights "while receiving care at Syringa Surgery Center" and the patient's responsibilities. The third form was a consent form, which began, "CONSENT FOR TREATMENT: I hereby authorize necessary medical care to be rendered to the patient registered hereon."[2] The remainder of the form expressly dealt with "Syringa Surgery Center," including obtaining payment for its services from insurance, Medicare, or Medicaid. Ms. Shatto contends that "[t]he consent form lumps the services of the Surgery Center and the physician together, making Dr. Allen and the Respondent indistinguishable." Ms. Shatto relies upon two provisions in the form.

The first provision stated that "Syringa Surgery Center" would submit insurance claims and that Mr. Wainio authorized Dr. Allen to release information required by the insurance company. The relevant portion of the provision was as follows:

> Insurance claims will be submitted by Syringa Surgery Center; however, I am responsible for any follow up with my insurance company. AUTHORIZATION

---

[1] Although the name of the center is Syringa Surgical Center, the forms referred to it as Syringa Surgery Center.

[2] On the morning of the surgery, Mr. Wainio signed another consent form for the "operation, anesthesia or other procedures," which authorized Dr. Allen "and assistants of his choice" to perform the described surgery.

TO RELEASE INFORMATION:  I herby [sic] authorize my physician to give my insurance company or company's [sic] any and all information they may require concerning my case, and agree to pay all charges made by Syringa Surgery Center regarding services rendered to me, or on my behalf, regardless of any insurance contracts or agreement to the company.

The provision did not state that the Center would submit insurance claims to pay for Dr. Allen's services, nor does Ms. Shatto contend that the Center did so.  In context, it appears to authorize Dr. Allen to provide any information required by Mr. Wainio's insurance company, if any, to pay a claim submitted by the Surgical Center for its services.

The second provision regarded Medicare payments and specifically included "physician services."  It stated:

I request payment of authorized Medicare benefits to me, or in my behalf, for any services furnished to me by or at Syringa Surgery Center, including physician services.  I authorize any holder of medical and other information about me to release to Medicare and its agents any information needed to determine these benefits for related services.  The signature is effective until revoked by the beneficiary.

This is a general request for Medicare benefits for services furnished by the Surgical Center or Mr. Wainio's physician.  Ms. Shatto has not pointed to anything in the record showing whether any request for Medicare benefits was ever submitted by either the Surgical Center or by Dr. Allen.

On the morning of the surgery, Mr. Wainio signed a fourth form titled "Syringa Surgery Center Consent for Operation, Anesthesia or Other Procedures."  It included a statement, "I am aware of my physicians' [sic] ownership in the surgery center and am aware that I may have surgery or treatment performed at any other facility where my surgeon has privileges."

The first element of the doctrine of apparent authority is "conduct by the principal that would lead a person to reasonably believe that another person acts on the principal's behalf." *Jones*, 147 Idaho at 116, 206 P.3d at 480.  Ms. Shatto has not pointed to any conduct by the Surgical Center that would lead a person to reasonably believe that Dr. Allen acted on the Surgical Center's behalf in recommending or going forward with the surgery.  The second element of the doctrine of apparent authority is "acceptance of the agent's service by one who reasonably believes it is rendered on behalf of the principal."  *Id.*  Ms. Shatto has not pointed to any evidence that Mr. Wainio thought that Dr. Allen's recommendation for the surgery or

performance of the surgery was done on behalf of the Surgical Center. This is not a situation in which Mr. Wainio was injured by someone working at the Surgical Center who was providing support services in connection with his surgery. The evidence does not show that Mr. Wainio reasonably believed that the Surgical Center was providing Dr. Allen's services. Therefore, the district court did not err in failing to find that there was a genuine issue of material fact supporting Ms. Shatto's claim that the Surgical Center was liable for the conduct of Dr. Allen under the doctrine of apparent authority.

## IV.
### Did the District Court Err in Granting Summary Judgment Dismissing Ms. Shatto's Claim that the Surgical Center Was Negligent?

It is undisputed that Dr. Allen began misusing prescription drugs in 2006 or 2007 and became addicted to Propofol in February or March 2009; that in September he entered an inpatient treatment program; that he successfully completed the program on November 17, 2009; and that the treatment provider recommended that he resume normal working duties on November 30, 2009. Prior to September 2009, the Surgical Center kept Propofol in an unlocked anesthesia cart, and Dr. Allen took Propofol from that cart for his use. The registered nurse, who is currently the director of surgical services, testified that in September 2009 the Surgical Center adopted a counting process for Propofol, that it has adhered to that policy since then, and that after that date there had been no discrepancies in the counts. When Dr. Ozeran had previously become aware of Dr. Allen's abuse of Propofol, he had taken Dr. Allen's keys to the medicine cabinet and to the Surgical Center.

In opposing the Surgical Center's motion for summary judgment, Ms. Shatto pointed to evidence that prior to Dr. Allen's entry into the drug treatment program in 2009, Dr. Ozeran knew of Dr. Allen's drug use. However, she did not point to any evidence in the record indicating that the Surgical Center or Dr. Ozeran had knowledge of any drug use by Dr. Allen after he had completed his inpatient treatment and prior to his treatment of Mr. Wainio in January 2010. Ms. Shatto merely asserted, "Further, [Surgical Center] was negligent by not assuring Dr. Allen had the requisite skill and ability to perform surgeries, particularly under his drug-infused state during 2009 and, Appellants contend, 2010." She did not cite to any evidence in the record supporting that assertion. She also asserted, "[Surgical Center] violated its own

10

policies, procedures, regulations and bylaws by allowing Dr. Allen to continue to conduct surgery with a known drug problem; and by allowing access to the drugs that Dr. Allen was abusing." Again, she did not identify those policies, procedures, and regulations, nor did she point to any evidence in the record supporting that assertion. She makes the identical unsupported assertions on appeal. The district court did not err in dismissing Ms. Shatto's claim that the Surgical Center was negligent.

## V.
### Did the District Court Err in Holding that the Opinion of Ms. Shatto's Expert Was Inadmissible?

On November 14, 2012, the Plaintiffs filed the affidavit of an expert who opined that Dr. Allen had relapsed in his use of prescription drugs at the time of his treatment of Mr. Wainio. On January 23, 2014, Dr. Allen filed a motion in limine seeking to exclude all evidence of his drug use or abuse and to exclude that expert from testifying at trial. He contended that the expert's opinion was inadmissible because it was speculative and not based upon any facts in the record. On January 23, 2014, the Surgical Center joined in the motion. After the motions were briefed and argued, the district court entered a decision and order on February 19, 2014. It stated that it was "not persuaded that an adequate foundation with sufficient reliability has been laid for expert opinion that a factual event, relapse, occurred," but the court did not strike the expert's affidavit. The court also stated, pursuant to Rule 403 of the Idaho Rules of Evidence, that it "finds any relevance [of the expert's opinion] that may exist to be substantially outweighed by the danger of unfair prejudice, and would confuse the issues, mislead the jury, or cause undue delay." The court ordered that "Defendant Allen's Motion in Limine to prevent admission of evidence regarding Dr. Allen's prior drug abuse is hereby GRANTED."

Ms. Shatto admitted during oral argument that the district court's ruling on the motion in limine would be moot if this Court upholds the court's grant of summary judgment, but she asked us to decide the issue anyway for whatever future guidance it may provide. Because the issue is moot, we decline to address it.

11

**VI.**
**Conclusion.**

We affirm the judgment of the district court, and we award Respondent costs on appeal.

Chief Justice J. JONES and Justices BURDICK, W. JONES and HORTON **CONCUR.**